[No. 2119]

## STATE OF NEVADA, RESPONDENT, *v.* WELLS, FARGO & CO. (A CORPORATION), APPELLANT.

### [150 Pac. 836]

1. COMMERCE—CORPORATIONS—INTERFERENCE WITH INTERSTATE COMMERCE.

    The state may tax the intrastate business of a corporation engaged in intrastate and interstate commerce, but may not tax the interstate business by levy of a tax on the gross receipts of the corporation.

2. TAXATION—CORPORATIONS—INTERFERENCE WITH INTERSTATE COMMERCE.

    The property of an express company doing an interstate and an intrastate business is in character tangible and intangible, and the property is subject to assessment and taxation, and the situs of the intangible property is distributed where its tangible property is located and its work done.

3. TAXATION — PROPERTY SUBJECT TO TAXATION — CONSTITUTIONAL AND STATUTORY PROVISIONS—"PERSONAL PROPERTY."

    Const. art. 10 (as amended by Stats. 1913, c. 83), requiring the legislature to provide by law for a uniform and equal rate of assessment and taxation and exempt from taxation enumerated property, and Rev. Laws, secs. 3621, 3622, declaring that all property shall be subject to taxation, except exempt property, defining real estate, and declaring that the term "personal property" shall include all capital, loaned, invested, or employed in trade. commerce, or business, the capital stock of corporations doing business within the state, and all property not included in the term "real estate," authorize and direct that all property of every kind, character, and nature not specifically exempted shall be subject to taxation, and authorize a tax on the intangible property of an express company engaged in interstate and intrastate business.

4. TAXATION—ASSESSMENT—STATUTORY PROVISIONS.

    Where the statutes define the different species of property subject to taxation and provide that every species shall be assessed at its actual cash value, but are silent as to the mode of ascertaining the cash value, the revenue officers may assess

the intangible property of an express company as against the objection that the legislature has failed to adopt any rule governing the manner of determining the value of the property.

5. TAXATION—ASSESSMENT—STATUTORY PROVISIONS—DELEGATION OF POWER.

Rev. Laws, sec. 3797, requiring county assessors to meet annually and establish a valuation through the state of property for taxation, when considered in connection with sections 3624, 3800, relating to the assessment of property at its actual cash value, does not delegate legislative power to the assessors acting collectively or severally in determining whether property is subject to taxation, but the only discretion conferred on the board of assessors is to determine whether other kinds of property than those enumerated by statute can be valued and assessed more uniformly by the board than by the county assessors acting separately, and the tangible and intangible property of an express company may be assessed.

6. STATUTES—VALIDITY—PRESUMPTIONS.

All doubts as to the validity of a statute must be resolved in favor of validity.

7. TAXATION—ASSESSMENT—NOTICE—STATUTORY PROVISIONS.

Where a statute does not provide for notice of assessment of property for taxation, the giving of notice is not essential to make an assessment valid.

8. EVIDENCE—PRESUMPTIONS.

In the absence of a showing to the contrary, it will be presumed that assessing officers performed their duty in making an assessment of property for taxation.

9. TAXATION — ASSESSMENT — DESCRIPTION OF PROPERTY — SUFFICIENCY.

The state board of assessors, at an annual meeting, fixed a mileage valuation on the property of an express company doing intrastate and interstate business, after considering the fact that interstate business was not subject to taxation. The county assessor, in assessing the property of the company, described it as the right to carry express over railroad mileage operated by enumerated railroads, and stated that the company operated its business on 140.14 miles of railroad at a valuation for the business of $300 per mile. The company had furnished a statement of its property, and the county assessor sought to assess the intangible property of the company. *Held*, that the assessment sufficiently described the property.

10. TAXATION—ASSESSMENT—OVERASSESSMENTS—BURDEN OF PROOF.

Under Rev. Laws, sec. 3664, authorizing defendant, in an action for delinquent taxes, to show that the assessment is out of proportion and above the actual cash value of the property assessed, defendant, in an action for delinquent taxes, has the burden of establishing excessive valuation on his property.

11. TAXATION—ASSESSMENT—OVERASSESSMENTS—BURDEN OF PROOF.

An express company was assessed at a mileage valuation of $300 per mile on 140.14 miles of. railroad, over which it transacted business in the state. The net operative earnings of the company were over $3,000,000, which would be a 10 per cent net earnings on property of the value of over $30,000,000. The operative mileage of the company was 65,474 miles, including nearly 15,000 miles of steamship lines. Excluding from a capitalization of the net earnings on a 10 per cent basis the value of all the property of the company outside the state used in its operative business, there would be net earnings of over $40 per mile for the entire system, or a valuation of over $400 per mile for the system as a whole. Excluding the steamship mileage, and assuming that 8 per cent was a fair interest on which to estimate the value of its property, subject to assessment basis, a resulting valuation of over $750 per operative mile would be shown. *Held*, that the assessment was not excessive, though the steamship mileage was not included.

12. TAXATION—ASSESSMENT—VALIDITY.

Where the valuation of property for taxation was not excessive, the fact that an erroneous method was used in good faith in determining the valuation was immaterial.

APPEAL from Sixth Judicial District Court, Humboldt County; *Edward A. Ducker*, Judge..

Action by the State of Nevada against Wells, Fargo & Company for the recovery of taxes. From a judgment for the state and an order denying motion for new trial, defendant appeals. **Affirmed.**

## STATEMENT OF FACTS

This is an action to recover taxes assessed against the appellant in the county of Humboldt, amounting to the sum of $694.53, which appellant permitted to go delinquent, together with penalties for nonpayment and costs. From a judgment for the state and from an order denying a motion for a new trial, defendant appeals.

The complaint alleged that for the year 1910, in the county of Humboldt, the assessor of said county did duly assess and put down on an assessment roll all the real and personal property in said county subject to taxation, which said assessment roll was thereafter submitted to and duly equalized by the board of equalization.

That the defendant, appellant herein, was then and

there the owner of, and there was duly assessed to it, the following-described property: "That certain property belonging to said Wells, Fargo & Company, to wit: The right to carry express and right to transact all other business, then and there, and commonly done and transacted by the said Wells, Fargo & Company over the railroad mileage operated by the Southern Pacific Company, a corporation, on that railroad track known as the Central Pacific Railroad passing through said Humboldt County. * * * (Here follows description of line.) The railroad mileage of the said Southern Pacific Company within the said county of Humboldt, on which the said Wells, Fargo & Company operates its said express business is one hundred and forty and fourteen one-hundredths (140.14) miles, at a valuation for the said business of three hundred dollars ($300) per mile."

The answer denied that the property described in the complaint was within the county of Humboldt, or that the same was subject to taxation; that the same was duly or at all assessed to said defendant, or that taxes were duly levied thereon; that the assessment was made by the county assessor of Humboldt County. The answer alleged that there is no law in the State of Nevada authorizing such assessment; that the same is contrary to the constitution of the United States in that it is an attempt to levy a tax for the right to engage in interstate commerce.

For a further and separate answer and defense to the complaint, defendant alleged: That the county assessor did not make the assessment, but that the same was made by the state board of assessors in January, 1910; that the law under which the said state board of assessors made the assessment is unconstitutional in that it is an attempt to delegate to said board the power and duty of determining or ascertaining what property shall be assessed by it, and is an attempted delegation of the taxing power; that the assessment and taxes described in the complaint were made, levied, and imposed upon the right of defendant to conduct and transact its interstate business; that said law

as construed makes no distinction between intrastate and interstate business and imposes a tax on the right to conduct interstate business; that neither from the law nor the assessment can it be determined what portion of the tax assessed is imposed on the right to transact intrastate business as distinguished from interstate business; that the tax and assessment were made and levied and were so intended to be made and levied upon the right of the defendant to do both intrastate and interstate business; that the law does not provide for any notice to be given to this defendant, nor give it any opportunity to appear and be heard at the time of making said assessment, and defendant had no notice of the meeting of the board or of the assessment, nor any opportunity to be heard.

For a further answer and defense, defendant alleged:

"That the total property owned by this defendant and situate in the State of Nevada and used by this defendant in the transaction of its business in said state as a going concern, exclusive of real property which is taxed as such, amounts, and that the total property so owned and used by this defendant and situate in the county of Humboldt amounts, to and is the sum of $383.98. That, if the said property so owned and used by this defendant and situate in the county of Humboldt was taxed· at the same rate and in the same manner as other property situate in the county of Humboldt and owned by individuals and corporations other than this defendant, the tax so levied and assessed would amount to and be the sum of $6.32. That the total tax assessed against this corporation in the State of Nevada by the state board of assessors in the month of January, 1910, and being the assessment referred to in the answer herein and being the assessment under which the taxes herein sued for were levied, amount to and exceed the sum of $10,000. That at said meeting of the board of assessors said board assessed this defendant and valued the property used by this defendant at the rate or sum of $300 for every mile of railroad over which this defendant transacted business,

and apportioned said assessment or tax to the various counties of the state in accordance with the number of miles of such railroads so situated within said county, and that the tax herein sued for was not otherwise levied or assessed. That said system of taxation so attempted to be enforced against this defendant is confiscatory, and the property of this defendant is taken without due process of law in this: That this defendant is assessed for taxes equaling in amount the property owned by it in the State of Nevada, whereas all other property in the State of Nevada is assessed at a much less rate, to wit, at the approximate rate of $2.25 for each $100 of the assessed value of the property so owned by them, and as defendant is informed and believes other property in the State of Nevada is assessed at 60 per cent of its actual value. That the laws of the State of Nevada under which said taxes are purported to be assessed and levied, and particularly the law referred to in the first, separate, and distinct defense herein, are null and void in that they conflict with and violate the constitution of the State of Nevada, and particularly section 20 [article 4] thereof, wherein it is provided that the legislature shall enact no special or local laws for the assessment and collection of taxes for state, county, and township purposes, and that said laws are further null and void in that they conflict with and violate the constitution of the United States and particularly the fourteenth amendment to said constitution, wherein it is provided that no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person with its jurisdiction the equal protection of the laws."

Plaintiff, in reply to defendant's answer, denied that the tax or assessment was made by any other person or body than the assessor of Humboldt County, or that the tax or assessment is an attempt to levy a tax upon the right of defendant in engaging in interstate commerce, or is a tax on such commerce, or is a tax other than on the property of the defendant described in the complaint, or that defendant was given no notice or opportunity to

be heard at the time of the action of the state board of assessors or of the board of equalization of Humboldt County, or that the total property owned by the defendant within the State of Nevada and used by the defendant in the transaction of its business in said state does not exceed the value of $11,373.67, and alleges the fact to be that the value of the property so owned and used by defendant in Humboldt County is the sum specified in the complaint; denies that the tax sued for was not otherwise levied or assessed than at the meeting of the state board of assessors, and alleges the fact to be that the tax was levied and assessed as set forth in the complaint; denies that the said tax is confiscatory or is assessed for taxes equaling the amount of property owned by it in the State of Nevada, or that the tax so assessed is in any way different or not uniform with the taxes levied and assessed against other property within the state.

At the trial, and prior to taking testimony, the following colloquy occurred between counsel, relative to the pleadings:

"Mr. Callahan—It is not the intention of the plaintiff to deny that the state board of assessors, at their meeting of January, 1910, placed a valuation upon this property of $300 per mile; it is the intention of the plaintiff to admit that fact. And it is the intention of the plaintiff to admit that the assessor of Humboldt County accepted that figure as the value of the property belonging to the defendant company.

"Mr. Gibbons—In other words, you confirmed, ratified, and approved the action of the state board of assessors.

"Mr. Callahan—No, sir, not exactly that. But that the county assessor then, after that action was taken by the state board of assessors, did every act necessary for him to do in assessing the property. That will be our position. I simply wish to make this comment here upon a portion of this reply, as the reply here seems to deny that any other person excepting the county assessor made the assessment. We will contend that the county assessor

did in fact make the assessment, but we are not going to deny that the state board of assessors that met in January did also place a valuation upon the defendant's property.

"Mr. Baker—* * * The position that the state takes in this case, is that the valuation upon the Wells-Fargo property in the state was placed by the state board of assessors, and that the assessors of each county are bound by that valuation, and cannot change it. That it is the duty of the assessors to assess the property, that the assessor shall assess and enter its true number on the instrument, carrying out and placing that valuation upon the property, and they have done so, but that the state board of assessors did place a uniform valuation on the property, and in that sense it assessed the property.

"Mr. Gibbons—In other words, the state board of assessors placed the valuation upon the property, and under the law the county assessors cannot change that valuation, but that the county assessor performs the ministerial act of making that assessment of fact, and entering it upon his books.

"Mr. Callahan—And also by assessing it, in the same manner in which real property is assessed, and he goes through the same channel as he does in assessing other property."

Counsel for the state thereupon offered in evidence the delinquent tax list for Humboldt County for the year 1910, the property assessed, as described in such list and appearing on the assessment roll, being described as set forth in the complaint, *supra*.

After calling the county assessor of Humboldt County and showing that he made the assessment, plaintiff rested.

Counsel for the defendant called as a witness Mr. J. F. Shaughnessy, member of the board of railroad commissioners for the State of Nevada, who testified, among other things, to the following:

"That as such commissioner, during January of the year 1910, I furnished to the state board of assessors a statement relative to the business or taxes of Wells, Fargo & Co."

Thereupon, counsel for defendant offered in evidence a copy of the minutes of the meeting of the state board of assessors held at Carson City January 10–15, 1910, which were admitted without objection.   The statement, prepared by the witness and furnished by the railroad commission to the state board of assessors, as the same appears from the minutes, reads as follows:

WELLS, FARGO & COMPANY

For the Year Ending June 30, 1909

| | |
|---|---:|
| Capitalization | $8,000,000.00 |
| Dividend paid during the year, 10 per cent | $800,000.00 |
| Funded debt | None |
| Gross revenue from operation | $24,476,432.37 |
| Express privileges (paid to railroads) | 11,416,199.60 |
| Operating revenue | $13,060,232.77 |
| Operating expenses | 9,664,933.85 |
| Net express revenue | $3,395,298.92 |
| Taxes (system as a whole) | 132,820.04 |
| | $3,262,478.88 |
| Other income | 1,401,900.46 |
| Total income after paying taxes | $4,664,379.34 |
| Dividends | 800,000.00 |
| Net income, carried to surplus | $3,864,379.34 |
| Total surplus accumulated and on hand June 30, 1909 | $24,455,417.51 |
| The gross earnings of Wells, Fargo & Company for the State of Nevada, as reported to the Railroad Commission for the calendar year ending December 31, 1908, was | $850,000.00 |
| Taxes paid to the State of Nevada, as reported to the Railroad Commission, was | $2,657.74 |

"Comparing the Wells-Fargo Express Company as a revenue producer and a taxpayer, attention may be directed to the fact that the Tonopah and Goldfield Railroad, which is a Nevada corporation, with gross earnings for the past year of $910,000, paid toward the maintenance of the county and state governments in taxes $45,850.66, while by contrast it may be noted that the Wells-Fargo Express Company, with gross earnings of $850,000, only paid in taxes $2,657.74.

"Further contrast in taxes may be shown by taking the

Virginia and Truckee Railway with gross earnings of only $295,000, and it is noted that they paid in taxes for the past year $16,366, while the Wells-Fargo Express Company, with gross earnings of $850,000, only paid in taxes $2,657.74.

"It has been suggested by your chairman that a per mile valuation should be assessed against this company in order that the various counties and the state may receive their just proportion of taxes.

"To find the valuation the 4 per cent of gross earnings basis may be used, or net earnings may be capitalized on a basis of 7 per cent. The net earnings as reported to the commission are $291,084.85, and this amount is 7 per cent on $4,000,000, which could fairly be taken as the value of express company's property, real, personal, and intangible, franchises, etc., within the State of Nevada. Applying 40 per cent of this valuation the same as other property is assessed in Nevada, we have a valuation of $1,600,000 for the purpose of taxation within this state. This company is operating within the state 1,890 miles of rail and stage line, and this would make an assessed valuation of $847 per mile.

"Assuming that an average levy of 2 per cent was applied it would produce $16.94 per mile, or a total of approximately $32,000 in gross taxes to the state and counties.

"If the 4 per cent of gross earnings basis is used, it may be noted that this will produce $34,000 in taxes for state and counties.

"The railroad express mileage of the Wells-Fargo Express Company in the state is approximately 1,700 miles and the stage-line mileage is 200 miles.

"If it is found expedient to eliminate the stage mileage and place an assessment valuation of $500 per mile on the 1,700 miles of railroad express mileage, it will make an assessed valuation of the express company's taxable property, tangible and intangible, of $850,000, and assuming that an average levy of 2 per cent was applied, it

would produce a tax of $10 per mile, or $17,000 in gross taxes for the state and counties."

The minutes of the board of assessors relative to the question of the assessment of Wells, Fargo & Co. are quite lengthy, and only such extracts are here set out as will show clearly the action of the board. It appears from the minutes that, on the preceding day, Judge H. F. Bartine, the chairman of the railroad commission, had read to the board of assessors the decision of the Supreme Court of the United States in *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 17 Sup. Ct. 604, 41 L.. Ed. 965, a copy of which decision is set out in full in the minutes of the meeting. We quote from the minutes the following:

"Judge Bartine—* * * Let me suggest further that in this Ohio case, which I read, the entire property of the express company was included by the supreme court to make it $16,000,000—$4,000,000 tangible and $12,000,000 consisting of the business they were doing. They were all lumped together. So if you fix a valuation of $300 per mile, that would include all the utilities they use in the transaction of their business, and not tax them separately.

"Mr. Owens—Mr. Chairman, I move that a valuation of $300 be placed against Wells, Fargo & Co., for all the railroad mileage they have in the State of Nevada.

"Mr. McBurney—I second the motion.

"Mr. Miles—Mr. Chairman, in this case, if it is levied on mileage only, and not on horses, wagons, offices, office furniture, etc., the question is now as to whether or not the assessor, in including those items of property, could seize and sell such property for the taxes, provided there was enough of that kind in the county.

"Judge Bartine—I don't think there is any question about it at all as long as $300 per mile is placed as the valuation of their property. The supreme court has said that it is just to take aggregate mileage as the basis in order to find out what the rate of taxes should be. If you make the total tax $300 per mile in your county, that

includes the offices, office furniture, safe and wagons and horses, etc., because they cannot do the business without these things, and, when you levy the tax of $300 per mile, that is the entire tax to be levied upon that company.

"Mr. Owens—I will include that in my motion. I would like to know for the information of the board, after listening to the statement by Judge Bartine, if the various buildings are not included in that intangible property? * * *

"The clerk called the roll, and the motion to place a valuation of $300 per mile on Wells, Fargo & Company was unanimously carried."

From the examination of the witness, Shaughnessy, we quote the following:

"Q. In other words, Mr. Shaughnessy, in order to arrive at the sum of $850,000, you took the aggregate of the sums of money received in the different stations in Nevada from intrastate business, and added to that the moneys received from interstate business, on business coming from other states into the State of Nevada, and also added to that, and to those sums the moneys received from interstate business forwarded from Nevada to other states and countries, and adding those three sums together you arrived at the sum of $850,000. A. That is correct—yes, sir. * . * *

"Q. How did you arrive at the sum of two hundred and ninety-one odd thousand dollars mentioned on page 117 of the defendant's exhibit 1? A. The statement as made on page 117, the net earnings as reported to the commission are $291,084.85. That adding and calculation there explains the method of arriving at that. We have on file in our office as reported by the Wells, Fargo & Co., and also by the railroad company, copies of all of the contracts of the division of the gross charge as express traffic, comprising the amount that the express company shall pay to the railroad for privilege for its transportation, for the transportation of the express business, and that charge will average for transportation known as the railroad privilege about 50 per cent of the express charges. * * *

"Q. And the basis of taxation upon the net profits of two hundred and ninety-one odd thousand dollars, or the gross profits of eight hundred and fifty odd thousand dollars, was not figured out upon the basis of the mileage in the State of Nevada, to the entire mileage?   A. No.

"Q. Through which the Wells, Fargo & Co. operates? A. No; sir; it was not.

"Q. And there was no attempt made by you, or by the board of assessors, to proportion the amount of business done within the State of Nevada, in the same proportion as the mileage within the State of Nevada bore to the entire mileage over which Wells, Fargo & Co. conducts its business?   A. No.

"Q. And the tax was not levied upon any such basis, nor was the assessment placed upon any such basis?   A. No, it was not.   *   *   *

"Q. Then, as I understand your testimony, the earnings of the Wells, Fargo & Co. on business that was carried from the State of Nevada into other states, and from other states into the State of Nevada, was taken into consideration and made a part of the amount, which was reported by you to be the earnings of the Wells-Fargo Company?   A. Yes, sir, there was an inclusion of the interstate earnings in that report.   *   *   *

"Mr. Gibbons—Q. Do you know of any other reason than the reasons set forth in the minutes of the meeting of the state board of assessors in 1910, why this taxation was placed in the form of a mileage tax?   A. With the idea in view that it would more nearly reach the fair value of the property, and make a better distribution of it, and a better equalization than the previous system.   *   *   *

"Q. Do you know what the gross intrastate earnings for the year 1910 were?   A. Yes, sir, I think I have that. The gross intrastate earnings in Nevada for the year 1910 —that is the year and for the year ending June 30, 1910— were $79,550.40.

"Q. You do not know that the net intrastate earnings of Wells, Fargo & Co., for the year 1910 were $6,225.61? A. No, sir; I did not.

"Q. Do you know what the aggregate tax so assessed

by the state board of assessors for the year 1910 against
Wells, Fargo & Co. amounted to throughout the state,
the state and county taxes? A. Yes, sir; I have figured
that. I think it would aggregate about $11,000. * * *

"Q. Did you, in making up this report to the state
board of assessors, in any way consider the franchise—
to tax the franchise? A. No, sir; we considered the
property, tangible and intangible."

The report of the Wells-Fargo Company to the railroad
commission of the State of Nevada, ending June 30, 1908,
referred to in the testimony of Mr. Shaughnessy, was
offered in evidence by the defendant. This report, in
addition to the figures included in the statement furnished
by the railroad commission to the state board of assessors,
shows the following with reference to the receipts of the
company from the business transacted within the State of
Nevada:

Total receipts from intrastate business................................$124,794.12
Total receipts from business originating at points outside
        the state and received at points within the state..........$583,485.97
Total receipts from business originating within the state
        and forwarded to points outside the state.....................$141,905.69
Office expenses within the state................................................$134,007.99

The report also shows that the receipts from operation
for the year 1908 were $24,490,699.06, and the total net
operating revenue was $3,115,025.66. The company had
an income from other sources of $1,138,891.59. The report
shows net corporate income from all sources to have been
$4,180,615.74. The report also contains the following
reference to the operative mileage of the company:

TOTAL MILEAGE OPERATED—ENTIRE SYSTEM
Steam railroads................................................................48,576.04 miles
Electric railroads............................................................ 1,180.11 miles
Stages.............................................................................. 932.12 miles
Steamboat lines.............................................:.............. 336.65 miles
Ocean steamers...............................................................14,449.00 miles
                                                                                    _____
Total....................................................................................65,473.92 miles

Relative to the report of the appellant corporation for
the year 1908, the following appears in the testimony of
the witness, Shaughnessy:

"Q. Do you know of any reason why the earnings of

the Wells-Fargo Company for the year 1908 should have been taken as a basis for taxing them in the year 1910? A. No, the only reason that it was taken was that that was the only data we had; there was no other data available at that time.

"Q. Well, it would be a fair assumption would it not—that is, in your opinion it was a fair assumption that their business would probably be about the same in 1910 as it would be and was in 1908? A. Yes, we figured that way.

"Q. It would not vary much? A. Yes, sir; we figured that it would run substantially the same.

"Q. And you have no other data at hand? A. That was the last official report we had before us.

E. E. McMichael, division superintendent of the defendant corporation, was called as witness for defendant and testified that he did not know of any officers or agents of the defendant corporation being present at the meeting of the state board of assessors in January, 1910; that the defendant did not, to his knowledge, receive any notice that the state board of assessors would at that time place any valuation upon any of its property; that he had examined the records of the company to ascertain if knowledge of the notice had been received, and that none could be found; that the value of the tangible personal property of the defendant company in the county of Humboldt was $383.98; that the total tangible property in the State of Nevada was $11,374.67.

Y. C. Lawsan, witness for the defendant, testified that he was at the time special representative of the company in San Francisco, and for some time prior thereto had been assistant auditor of the company. The witness identified the following statement, which was admitted in evidence:

STATEMENT OF WELLS, FARGO & COMPANY'S OPERATIONS WITHIN THE STATE OF NEVADA FOR THE YEAR 1910

| | |
|---|---|
| Receipts from express operations—intrastate | $76,342.18 |
| Express privileges—railroads and stages | 34,810.74 |
| Taxes and licenses | 2,543.26 |
| Operating expenses | 32,762.57 |
| [In pencil] | $70,116.57 |
| | $6,225.61 |

The witness testified that the value of the property of the company outside the State of Nevada used in the business of the company, exclusive of real estate, was $4,251,939.16.

*L. A. Gibbons* and *Hoyt, Gibbons & French,* for Appellant:

The power to tax is the power to destroy. The tax attempted is a tax upon the right to do interstate business. This is forbidden by the constitution of the United States and by the constitution and law of Nevada. (*Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 171, 218.)

Irrespective of the question of interstate commerce, the rule has been long settled in Nevada that the property of the carrier can be legally assessed below its necessary cost when it is shown that it is worth less than such necessary cost, but that it cannot be assessed by adding anything to such necessary cost, for that would include "its franchise, or monopoly, or something of that sort." (*State* v. *C. P. R. R. Co.,* 10 Nev. 47, 74; *State* v. *V. & T. R. R. Co.,* 46 Pac. 723, 724.)

The attempted assessment is not in accordance with section 1 of article 10 of the state constitution, which provides for the equal distribution of the burdens of taxation. (*State* v. *Eastabrook,* 3 Nev. 178; *Sawyer* v. *Dooley,* 21 Nev. 391; *Cummings* v. *National Bank,* 101 U. S. 153; *Exchange Bank* v. *Hines,* 3 Ohio St. 15.)

There was no statutory authority for the assessment. An express legislative enactment is a prerequisite to such an assessment. (*Fargo* v. *Hart,* 193 U. S. 490; *G. H. & S. A. Ry.* v. *Texas,* 210 U. S. 217; *Postal Tel.* v. *Adams,* 155 U. S. 688; *Hager* v. *Am. Surety Co.,* 121 Ky. 791; *Central Pacific* v. *Evans,* 111 Fed. 71; *Pullman Co.* v. *Tamble,* 207 Fed. 35; *Mayer* v. *Baltimore & O. R. Co.,* 127 U. S. 117.)

The assessment is fraudulent, aside from any question of fraudulent intent on the part of the assessors. (*C. B. & Q.* v. *Commissioners,* 54 Kan. 781; *Board* v. *Bullard,* 77 Kan. 357; *Bank* v. *Commissioners,* 83 Kan. 376; *Royal Salt*

*Co.* v. *Commissioners*, 82 Kan. 203; *Cummings* v. *Bank*, 101 U. S. 153; *Bank* v. *Hines*, 3 Ohio St. 15.)

Courts will give relief where the action of the taxing authorities is "so oppressive, arbitrary, and capricious as to amount to fraud," whether intended or not. (*Royal Salt Co.* v. *Board*, 82 Kan. 203, 107 Pac. 640.)

If the attempted assessment be sustained, there is no limit to which an assessing state may go in the taxing of interstate commerce. (*Gloucester Ferry* v. *Pennsylvania*, 114 U. S. 196, 205.)

The statute under which the state board of assessors assumed to act does not authorize the taxation of express companies, and is unconstitutional in so far as it attempts to confer power upon the board to tax any other property than that mentioned therein. (Rev. Laws, sec. 3797; *State* v. *Mayor of Des Moines*, 103 Iowa, 76; *People* v. *Common Council*, 28 Mich. 228; Cooley on Taxation, 3d ed. vol. 1, pp. 102, 103; Cooley on Const. Lim. 5th ed. p. 139.)

Legislative bodies cannot delegate their powers in matters of taxation. (*Thompson* v. *Schermerhorn*, 6 N. Y. 92: *Gave* v. *Graham*, 57 Ill. 144; *Board* v. *Houston*, 71 Ill. 318; *State* v. *Fisk*, 9 R. I. 94; *State* v. *City of Paterson*, 34 N. J. Law, 167; *Parks* v. *Board*, 61 Fed. 436, 439; *James* v. *U. S. Fidelity Co.*, 133 Ky. 299, 304; *Central Pacific Ry.* v. *Evans*, 111 Fed. 71; *O'Neill* v. *American Fire I. Co.*, 26 L. R. A. 715; *Anderson* v. *Manchester Fire I. Co.*, 28 L. R. A. 609.)

The board might value some property, and the assessors, acting separately, other classes of property. (*Sawyer* v. *Dooley*, 21 Nev. 390.)

Under the constitution, when taxes are laid they must be imposed by the legislature in an equal uniform manner, and at a just valuation. A board or individuals cannot be empowered by the legislature to say whether or not certain property shall be taxed or remain untaxed. (*Barto* v. *Himrod*, 8 N. Y. 483, 59 Am. Dec. 546; *Reelfoot* v. *Dawson*, 34 L. R. A. 731; Gray on Lim. of Taxing Power, secs. 539–544; *Shaezlin* v. *Cabiness*, 135 Cal. 466, 56 L. R. A. 733; *State* v. *State Board of Examiners*, 104 Pac. 1055; *Noel* v.

*People,* 187 Ill. 587, 52 L. R. A. 287; *Ruggles* v. *Collier,* 43 Mo. 353; *Dowling* v. *Lancashire Ins. Co.,* 31 L. R. A. 112, 115; *State* v. *Budge,* 105 N. W. 724, 726, 727; *In Re Municipal Charters,* 62 Atl. 307, 308; *State* v. *Great Northern Ry. Co.,* 10 L. R. A. 251; *Inhabitants* v. *Allen,* 39 Atl. 716, 719.)

The state may tax the property of appellant located and having its situs for taxation within the state, and a proper proportion of the property of appellant, if by statute an orderly and legitimate method is provided for determining upon a fair and reasonable basis the proportion of such property which may become subject to taxation within the state. (*Pullman Co.* v. *Pa.,* 141 U. S. 18; *Fargo* v. *Hart,* 193 U. S. 490; *Western Union T. Co.* v. *Kansas,* 216 U. S. 1; *Pullman* v. *Kansas,* 216 U. S. 1, 56; *Postal Tel. Co.* v. *Adams,* 155 U. S. 688.)

The assessment and tax constitute an unlawful encroachment upon the exclusive power of the federal government to regulate interstate commerce, and is a tax on property outside the state. The earnings from interstate commerce cannot be taxed, nor can the privilege of carrying on interstate commerce be taxed, nor can such a burden be put upon the property or business within the state as will amount either to a tax upon interstate commerce or a tax on property beyond the limits of the state. (*State Freight Tax,* 15 Wall. 232; *Fargo* v. *Michigan,* 121 U. S. 230; *Phila. S. Co.* v. *Penn.,* 122 U. S. 324; *Gloucester Ferry Co.* v. *Penn.,* 114 U. S. 196; *Ratterman* v. *Western Union T. Co.,* 127 U. S. 411; *Western Union T. Co.* v. *Penn.,* 128 U. S. 39; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *Lyng* v. *Mich.,* 135 U. S. 161; *G. H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217; *Leo Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Western Union T. Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *A. T. & S. F. Ry.* v. *O'Connor,* 223 U. S. 280; *Cox* v. *Collector,* 12 Wall. 204; *Tel. Co.* v. *Texas,* 105 U. S. 460; *Western Union Co.* v. *Alabama,* 132 U. S. 47.)

A license tax based upon the total capital of a corporation

without just relation to the proportion which the capital used in the state bears to the whole capital is unconstitutional and void.    (*Mulford Company* v. *Curry*, 44 Cal. 80.)

Where a statutory commutation or substituted method of taxation is provided for a particular property or business, the question of the equality of taxation is always present, and the substituted method must be a fair equivalent for a tax on the property, considering its value.    (*Postal Tel. Co.* v. *Adams*, 155 U. S. 686, 696; *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335; *Ashley* v. *Ryan*, 153 U. S. 436, 440.)

The tax is void because no notice was given to the defendant, and opportunity was denied the defendant to have it equalized.    (Cooley on Taxation, p. 624.)

Constitutional authority and legislative sanction are prerequisites to the imposition of a privilege tax, and the legislature must in unmistakable terms limit the incidence of tax to intrastate commerce, and must as clearly exclude from its operation interstate and foreign commerce.    (*State* v. *Northern Express Co.*, 141 Pac. 757.)

*Geo. B. Thatcher*, Attorney-General, and *J. A. Callahan*, District Attorney, for Respondent:

The receipt in evidence of the delinquent list, certified and corrected, was *prima facie* proof that all forms of law in relation to the assessment and levy had been complied with.    (Rev. Laws, sec. 3658; *State* v. *N. C. R. R. Co.*, 26 Nev. 358.)

All property, of whatever kind and nature in the state, is subject to taxation.    (Rev. Laws, sec. 3621; Const. Nev. sec. 2, art. 8; *Sawyer* v. *Dooley*, 21 Nev. 391.)

The property of appellant assessed by the county assessor of Humboldt County was within Humboldt County, and taxable therein.    (*Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194, 60 L. R. A. 641.)

The tax sued for does not violate the United States constitution, the trial court did not err in sustaining the assessment and tax, and the same was not an unlawful

burden on interstate commerce. Such a tax is not a burden so long as it is essentially a tax on property only. (*Adams Express Co.* v. *Indiana,* 165 U. S. 255; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194; *State* v. *Candy Cattle Car Co.,* 85 Minn. 460, 89 N. W. 66; *Union R. T. Co.* v. *Lynch,* 18 Utah, 392, 48 L. R. A. 794, 55 Pac. 639.)

An express company is not denied the equal protection of the laws by classifying it with telegraph and railroad companies as subject to the unit rate of taxation, which estimates the value of the whole plant, though situated in different states, as an entirety for the purpose of determining the value of the property in one state. (*Adams Express Co.* v. *Ohio State Auditor, supra; Adams Express Co,* v. *Indiana,* 165 U. S. 255; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 156; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171; *Amer. Sugar R. Co.* v. *Louisiana,* 179 U. S. 95; *C. P. R. R. Co.* v. *Evans,* 111 Fed. 77; *Michigan Railway Tax Cases,* 138 Fed. 233; *Kingsley* v. *Merrill,* 67 L. R. A. 206, 99 N. W. 1044.)

The property of an express company distributed through different states constitutes a single plant, united in a single specific use, so that for the taxation of that portion of it which is within any state the contract for transportation facilities, and the capital necessary to carry on the business, whether represented in tangible or intangible property, may be included in the assessment. (*Adams Express Co.* v. *Ohio State Auditor, supra; New York* v. *Roberts,* 171 U. S. 655; *Spreckels S. R. Co.* v. *McLain,* 192 U. S. 414; *Wells, Fargo & Co.* v. *Crawford,* 63 Ark. 588, 37 L. R. A. 375.)

The situs of intangible property of an express company engaged in interstate business is not for the purpose of taxation simply where its home office is, but such property is distributed wherever its tangible property is located and its work done. (*Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185.)

Wherever separate articles of tangible property are joined, not simply by a unity of ownership, but in a unity

of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate property. (*Adams Express Co.* v. *Ohio State Auditor, supra.*)

The franchise to do is a combination of franchises embracing all things which a corporation is given power to do, and this power constitutes a substantial matter of taxation in every state in which such franchises are assessed in connection with tangible property. (*Adams Express Company* v. *Ohio State Auditor, supra.*)

When the value of a thing proper to be taxed cannot be ascertained by ordinary methods, its use may be referred to. (*Adams Express Co.* v. *Ohio State Auditor, supra.*)

Whatever property is worth for the purpose of income and sale, it is also worth for the purpose of taxation. (*Adams Express Co.* v. *Ohio State Auditor, supra; State* v. *V. & T. R. R. Co.*, 46 Pac. 724.)

The statutes governing the assessment and taxation of property are not unconstitutional as delegating the taxing power. (*Sawyer* v. *Dooley*, 21 Nev. 390.)

The assessment and tax are not void "because no notice was given the appellant," the acts required of officers between the assessment and the commencement of suit being directory merely. (37 Cyc. 1019; *State* v. *Sadler*, 21 Nev. 13.)

The court did not err in refusing to confine the assessment to the tangible property of appellant. (Rev. Laws, sec. 3621; *Adams Express Co.* v. *Ohio State Auditor, supra; State* v. *V. & T. R. R. Co.*, 46 Pac. 724.)

By the Court, NORCROSS, C. J. (after stating the facts):

Section 52 of the general revenue act (Rev. Laws, sec. 3664) provides what defenses may be set up in an action for delinquent taxes. The section reads:

"The defendant may answer, which answer shall be verified: * * * Fifth—Fraud in the assessment, or in failing to comply with the provisions of this act; or that the assessment is out of proportion to and above the actual

cash value of the property assessed; *provided, however,* that in such last-mentioned case, where the defense is based upon the ground that the assessment is above the value of the property, the defense shall only be effectual as to the proportion of the tax based upon such excess of valuation, but in no such case shall an entire assessment be declared void."

We will assume that the defense interposed (that the tax sought to be recovered in this case is in effect an attempt to impose a tax on interstate commerce and for that reason void) is a legitimate defense to the action.

Three main questions are presented for determination:

First—Is the tax sought to be recovered in whole or in part a tax on interstate commerce?

Second—If not a tax on interstate commerce, but upon property of the appellant corporation within the state, was the assessment made in accordance with law?

Third—If property subject to taxation has been regularly assessed, is the assessment out of proportion to and above the actual cash value of the property?

[1-2] The law relative to taxation of express companies doing both intrastate and interstate business is stated in 7 Cyc. 479, as follows:

"The state may tax the intrastate business of express companies, but a state may not tax the interstate business, either by a levy on the gross receipts of an express company from its interstate business, or by a tax worded to cover companies doing interstate business only, but may tax the property of an express company engaged in interstate business, and may fix the value of such property, either by reference to the whole capital or the gross earnings of the company, or by taxing its intangible property in proportion to mileage in the state compared with total mileage."

The case does not present a question of a license or excise tax, and we shall not consider at length authorities dealing with laws, where such taxes have been opposed or have been attempted to be imposed upon express companies. Suffice it to say that, where such a

tax has been held to be a tax on interstate commerce or the right to engage in interstate commerce, it has been held violative of the constitution of the United States and void.  See *Ohio Tax Cases*, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737; *State* v. *Northern Express Co.*, 80 Wash. 309, 141 Pac. 757.

It was held by the Supreme Court of the United States in *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683, and same case on rehearing, 166 U. S. 185, 16 Sup. Ct. 604, 41 L. Ed. 965 (quoting from the syllabus, 166 U. S.), that:

"It is well settled that no state can interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce; and also that such restriction upon the power of a state does not in the least degree abridge its right to tax at their full value all the instrumentalities used for such commerce.  The state statutes imposing taxes upon express companies which form the subject of these suits grant no privilege of doing an express business, and contemplate only the assessment and levy of taxes upon the properties of the respective companies situated within the respective states.  In the complex civilization of today a large portion of the wealth of a community consists of intangible property, and there is nothing in the nature of things or in the limitations of the federal constitution which restrains a state from taxing such intangible property at its real value.  Whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not unfrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property.  Whatever property is worth for the purposes of income and sale, it is worth for the purposes of taxation; and, if the state comprehends all property in its scheme of taxation, then the good will of an organized and established industry must be recognized as a thing of value, and taxable.  The capital stock of a corporation

and the shares in a joint-stock company represent not only its tangible property, but also its intangible property, including therein all corporate franchises, and all contracts, privileges, and good will of the concern; and when, as in the case of the express company, the tangible property of the corporation is scattered through different states, by means of which its business is transacted in each, the situs of this intangible property is not simply where its home office is, but is distributed wherever its tangible property is located and its work is done. No finespun theories about situs should interfere to enable these large corporations, whose business is of necessity carried on through many states, from bearing in each state such burden of taxation as a fair distribution of the actual value of their property among those states requires."

See, also, *Adams Express Co.* v. *Kentucky*, 166 U. S. 171; *Wells, Fargo & Co.* v. *Johnson*, 205 Fed. 60.

Since the decisions of the Supreme Court of the United States reported in the 165th and 166th U. S. Reports, cited *supra*, it has been the settled law in this country that the property of an express company doing both an interstate and intrastate business is in character both tangible and intangible; that such property may be subject to assessment and taxes and that the situs of this intangible property is distributed wherever its tangible property is located and the work is done.

[3] Counsel for appellant do not, as we understand, contend that a state may not under appropriate laws levy a tax upon the intangible property of an express company, but that the tax sued upon was not a property tax, and, further, that the State of Nevada had enacted no laws by virtue of which such a tax could be imposed.

Article 10 of the state constitution provides:

"The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims,   *   *   *   and, also,

excepting such property as may be exempted by law for municipal, educational, literary, scientific, or other charitable purposes." (Rev. Laws, sec. 352, as amended, Stats. 1913, p. 106).

Section 5 of the general revenue act (Rev. Laws, sec. 3621) provides:

"All property of every kind and nature whatever, within this state, shall be subject to taxation except:" (Here follows exceptions authorized by the provisions of the constitution, *supra.*)

Section 6 of the same act (Rev. Laws, sec. 3622) provides:

"The term 'real estate,' when used in this act shall be deemed and taken to mean and include, and it is hereby declared to mean and include  *  *  *; and the same shall be listed under the head 'real estate.'

"The term 'personal property,' whenever used in this act, shall be deemed and taken to mean, and it is hereby declared to mean and include  *  *  *  all capital loaned, invested, or employed in trade, commerce or business whatsoever; the capital stock of all corporations,  *  *  * companies, associations, ferries, or individuals doing business or having an office within this state;  *  *  *  and all property of whatever kind or nature not included in the term 'real estate,' as said term is defined in this act.  *  *  *"

It is clear from the foregoing excerpts, we think, that the constitution authorizes and the statute directs that all property of every kind, character, and nature not specifically exempted, is subject to taxation. The fact that the legislature, at the time of the adoption of the statute, *supra,* may not have indulged in the hope even that property of the appellant company, other than that visible to the naked eye, might be subject to taxation, nevertheless, it used language clearly evincing an intent to cover every possible contingency and to exclude from the burden of taxation only such property as was specifically exempted.

[4] It is further contended, however, that the legislature

has failed to adopt any rule or regulation governing the manner of determining the value of the intangible property of the appellant corporation, and without such rule or regulation having been prescribed by the legislature the revenue officers of the state are unauthorized to make an assessment. We think this objection sufficiently answered by the decision of this court in *State* v. *Central Pacific R. R. Co.*, 10 Nev. 47, 63. This court, speaking through Beatty, J., said:

"No principle of valuation of property for purposes of taxation is prescribed by the laws of this state. The statutes define the different species of property, and provide that every species shall be assessed at its 'actual cash value.' But as to the mode of ascertaining the cash value our law is silent. No subsidiary principles of valuation are laid down to guide the owner in making his statement in those cases where he is required to specify values; and the assessor is left equally unrestricted in making his estimates. It follows that owners and assessors must be guided by those general principles which everywhere determine the valuation of property, independently of statutory rules."

See, also, *Commercial E. C. & P. Co.* v. *Judson*, 21 Wash. 49, 57 L. R. A. 78.

The property, tangible and intangible, of the appellant corporation being subject to taxation, was it duly assessed and taxed?

[5-6] By section 8 of the general revenue law (Rev. Laws, sec. 3624) it is provided:

"Between the date of the levy of taxes and the first Monday of September in each year, the county assessor * * * shall ascertain, by diligent inquiry and examination, all property in his county, real or personal, subject to taxation, and also the names of all persons, corporations, associations, companies, or firms, owning the same; and he shall then determine the true cash value of all such property, and he shall then list and assess the same to the person, firm, corporation, association, or company,

owing [owning] it. For the purpose of enabling the assessor to make such assessments, he shall demand from each person and firm, and from the president, cashier, treasurer, or managing agent of each corporation, association, or company, including all banking institutions, associations, or firms within his county, a statement under oath or affirmation of all the real estate or personal property within the county, owned or claimed by such persons, firm, corporation, association, or company." * * *

Section 1 of an act entitled "An act to provide for a more uniform valuation and assessment of property in this state," approved March 16, 1901 (Rev. Laws, sec. 3797), provides:

"The county assessors of the several counties of this state shall meet for a period not exceeding ten days in the office of the governor at Carson City, Nevada, on the second Monday in January of each year, and shall at such meetings establish a valuation through the state of all railroads and rolling stock of such railroads, of all telegraph and telephone lines, of all electric-light and power lines, of all cattle and sheep, and upon all other kinds of property which in the judgment of said assessors can be valued and assessed more uniformly by said assessors, acting collectively, than by the several county assessors acting separately; *provided,* that in fixing such valuation the location and situation of such property shall be considered; *and, provided further,* that nothing herein shall be so construed as to impair the right of the board of equalization of any county to equalize taxes on all property, the valuation of which has not been fixed at the annual meeting of the county assessors as provided in this section; but the said county board of equalization shall not have the power to equalize any property upon which a valuation has been placed by the said board of county assessors; *provided,* any taxpayer under the provisions of this act shall not be deprived of any remedy or redress in a court of law relating to the payment of taxes."

Section 4 of said last-mentioned act (Rev. Laws, sec. 3800) provides:

"The valuation fixed at such annual meetings shall be the actual cash value of all such property as may be designated, as now provided by law, taking into consideration the locality of such property, and the assessors of the several counties shall assess and enter upon the assessment rolls of their respective counties all such property at the valuation designated by such meeting of county assessors, and shall fix the value and assess all property not so valued at said meeting in the manner now provided by law."

It is contended that the provisions of the statute (Rev. Laws, sec. 3797, *supra*), empowering the state board of assessors to "establish a valuation * * * upon all other kinds of property which in the judgment of said assessors can be valued and assessed more uniformly by the said assessors, acting collectively, than by the several county assessors acting separately," is a void attempt to delegate legislative power.

Counsel for appellant in their brief say:

"The legislature cannot leave the question to the state board of assessors whether or not express companies shall be taxed or shall escape taxation, yet this is what the legislature has done, if the contention of plaintiff is correct."

We do not understand plaintiff to make any such contention, but it is clear that the statute in question does not leave to the discretion of the state board of assessors whether the property of express companies, or any other property subject to taxation, shall or shall not be taxed. If this were the statute, it would be void; but the revenue statutes require all property, except that specifically exempted, to be assessed either by the state board of assessors or by the county assessors.

Cooley, in his work on Taxation, says:

"We conceive that the legislature must, in every instance, prescribe the rule under which taxation may be laid; it must originate the authority under which, after due proceedings, the tax gatherer demands the

contribution; but it need not prescribe all the details of action, or even fix with precision the sum to be raised or all the particulars of its expenditure. If the rule is prescribed which, in its administration, works out the result, that is sufficient; but to refer the making of the rule to another authority would be in excess of legislative power. An illustration or two may possibly sufficiently explain the principle. The legislature, with the utmost propriety, may provide for a court of claims or a state board of audit, whose adjudications against the state shall be final upon it, and may direct that the amounts awarded shall go into the general levy for the year. Here is a rule to be properly worked out by a proper agency. A like provision for the adjustment of claims against counties, cities, and townships may also be made. A fund for contingent expenses may be put at the disposal of the executive or of other state officers, to be used for public purposes not previously enumerated in detail by the legislature. But to leave to a court of claims or any state officer or board the power to determine whether a tax should be laid for the current year, or at what rate, or upon what property, or how it should be collected, and whether lands should be sold or forfeited for its satisfaction—all this prescribes no rule and originates no authority; it merely attempts to empower some other tribunal to prescribe a rule and set in motion the tax machinery. And this is clearly incompetent. The legislature must make the law, but it may prescribe its own regulations regarding the ministerial agents that are to execute it."

The valuation of certain property must be determined by the state board, and the valuation of all property not so determined by it must be fixed by the several county assessors acting separately. The only discretion reposed in the state board is to determine whether other kinds of property than those enumerated can be valued and assessed more uniformly by the board than by the county assessors acting separately. The purpose of the assessment, whether made by the board or the individual assessors, is to determine the cash value of the property,

and this purpose is declared by the legislature and cannot be delegated.

As said by this court, in *Sawyer* v. *Dooley*, 21 Nev. 397, 32 Pac. 437:

"All property, whether assessed by the board or by the county assessors, must be assessed at its actual cash value, and there is no reason why this value may not be as accurately determined by several different men and boards as by one. In fact, it might sometimes be done much better, as one man, although an expert upon the value of horses and farms, might know but little of railroads or other property. If not, this would be an equally good argument against the system of separate county assessors and boards, and require all the property in the state to be assessed and equalized by one man or one board. All that is required is a uniformity of taxes, and not a uniformity in the manner of assessing or collecting them."

Ruling Case Law says:

"The difficulty in determining what powers may or may not be delegated seems in part to be due to a confusion between strictly legislative powers coming within the constitutional limitation, and other powers, which, although at times exercised by the legislature, are not strictly legislative and may be used in proper cases by persons belonging to the other departments of government, hence it is said that the rule that legislative powers cannot be delegated must be understood as being applicable only to cases where the discretion is essentially legislative. * * *" (6 R. C. L. 165.)

Power is delegated to the state board of assessors to determine whether certain property, other than the classes specifically mentioned, may be assessed more uniformly by the board than by the several assessors acting independently. The purpose of this delegated power, as expressed by the statute, is to carry out the mandate of the constitution and statutes for uniformity and equality in assessment and taxation of all property. The board is given no power to discriminate in favor or against any class of

property. It may in certain cases take from the county assessor the power to determine the valuation to be placed on a certain class of property, in which case the assessor is required to enter the property on the tax roll at the valuation fixed by the state board, but, as before stated, the statutory requirement as to cash valuation applies, whether the valuation is made by the board or the individual assessor. While the question is not entirely free from doubt, it is not clear that there is in this statute a delegation of strictly legislative power, and under the well-settled rule doubts must be resolved in favor of the statute.

[7] Assuming that no notice was given appellant that the state board of assessors would assess its property, we are of the opinion that the assessment would not for that reason be invalid. The statute makes no provision for such notice, and where notice is not required by statute none need be given. (37 Cyc. 1019, 1045.)

[8-9] Are the taxes involved in the action within the prohibition of a tax on interstate commerce? If it is a tax on the property of the appellant within the state that is sought to be recovered, then the tax is not invalid.

The language used by the assessor in the description appearing upon the assessment roll, it must be conceded, furnishes room for controversy as to whether property subject to taxation has in fact been assessed to appellant.

Counsel for appellant, in their claim that the language used in the description by the assessor rendered the assessment void, suggest that if the description had been: "The property of Wells, Fargo & Company, situated in Humboldt County, as united in ownership and use for express business," it would have been in accordance with what the Supreme Court of the United States in 166 U. S., *supra*, held was property subject to taxation. It must be admitted that the suggested description would have been better and, doubtless, would have obviated the serious question here presented. It does not follow, however, that, because the most apt language was not used,

the description is so faulty as to render the assessment void.

Under the provisions of section 8 of the general revenue law (Rev. Laws, sec. 3624, *supra*) it was the duty of the assessor to demand of appellant and of appellant to furnish a statement of its property subject to assessment in Humboldt County. In the absence of showing to the contrary, it will be presumed that the officer performed his duty. It does not appear that the appellant furnished any other or different description of its property. It had property subject to taxation in Humboldt County as defined in 166 U. S., *supra*. It should have furnished a statement of this property. It is denied, in the reply to defendant's answer, that the assessor intended to or did levy a tax on appellant's right to engage in interstate commerce.

From the testimony of the assessor of Humboldt County given at the trial we quote the following:

"Q. You said you are familiar with the property; all you know about it is what those words convey to you, is it not, Mr. Leonard? A. Yes, sir.

"Q. You never saw the property? A. As much as anybody can see it.

"Q. Well, did you ever see it? A. I have seen part of the business.

"Q. Yes, but that is about all any one can know about the property—the description that is contained therein? A. Yes, sir.

"Q. You did not see that property in the county? A. It is intangible."

The court refused to make a finding or to amend the findings upon the request of counsel for defendant "to the effect that the assessment and taxes described in the complaint were made, levied, and imposed upon the right of defendant to conduct and transact its interstate business over and along the railroad track and railway lines and systems named in said complaint."

If we look to the action of the state board of assessors, we find that it had under consideration the assessment

and valuation of appellant's property as held subject to
taxation by the decision of the Supreme Court of the
United States in 166 U. S., *supra.* The motion made and
carried by the state board fixing a mileage valuation on
the property of appellant was not very specific, so far as
description of the property to be assessed was concerned,
but the purpose of the board to assess property subject
to assessment is quite manifest from its whole proceed-
ings. It is, however, alleged in defendant's answer,
quoted *supra,* "that   *   *   *   said board assessed this
defendant and valued the property used by this defendant
at the rate   *   *   *   ."

Cyc., under the heading, "Necessity and Sufficiency of
Description," says:

"It is essential to the validity of the assessment list and
of all proceedings founded on it that it should contain a
description of all the property intended to be assessed;
but minute particularity is not required, any description
being sufficient which identifies the particular property
so clearly that the owner cannot be misled. And a
detailed description will be more easily dispensed with
where the assessor is unable to ascertain the exact nature
of the property. It is not necessary to enumerate every
item of personal property, but it has been held that the
different classes mentioned in the statute should be sepa-
rately listed, although by the force of some statutes, it is
now held sufficient to list all such property under the
general description of 'personal property'; and an assess-
ment even under such a heading as 'miscellany' may be
considered sufficient if the owner himself knows exactly
what is meant." (37 Cyc. p. 1051.)

A case presenting a question analogous to the one
under consideration came before the Supreme Court of
California in 1911. (*Western Union Telegraph Co.* v.
*Los Angeles County,* 160 Cal. 124, 116 Pac. 564.) The
description of the property assessed in the case last
mentioned, as stated in the opinion, read:

" 'Right to occupy the streets of the city of Los Angeles,'
without other words of description or identification, the

valuation thereof for purposes of assessment being placed at $50,000."

From the opinion of the court in that case by Angellotti, J., we further quote the following:

"By *Western Union Tel. Co.* v. *Hopkins* (L. A. No. 2445), 160 Cal. 106, 116 Pac. 557, it is decided that plaintiff had at the time of this assessment a right in the nature of a franchise in the streets of the city of Los Angeles, viz, the right to the exclusive occupation without compensation of portions thereof used for its poles and wires and underground conduit, derived from and held under section 536 of the civil code, which constituted no part of its federal franchise, and which was taxable for state and county purposes in the county of Los Angeles. If the assessment in the case at bar was exclusively of that right, it follows from the views announced in that case that the tax was valid. The only difficulty in this case arises from the wording of the description in the assessment. It is admitted that plaintiff has certain rights in regard to the streets of the city of Los Angeles by virtue of its federal franchise acquired under act of July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1913, secs. 10072–10077), and, of course, that franchise cannot be assessed by state, county, or municipality. It is claimed by plaintiff that its federal franchise is included in this assessment, and, if so included, that the entire assessment must fall as illegal, because the values of the two rights, federal and state, are so blended together that the unlawful part cannot be separated from the lawful part. If the first of these claims is well founded, the second necessarily follows. (*California* v. *C. P. R. R. Co.*, 127 U. S. 1, 29, 45, 8 Sup. Ct. 1073, 32 L. Ed. 150.) Plaintiff alleged in its complaint that the assessment was upon its federal franchise. By its answer defendant fully denied the allegations in this behalf, denying that the assessment was intended to or did impose any burden or tax on any federal franchise, and alleging that the only franchise or right assessed was that derived by plaintiff

from the State of California, under section 536 of the civil code. No evidence was introduced by either side on this issue, the case being submitted for decision upon the pleadings and upon a stipulation as to the facts, which stipulation is silent upon this proposition. There were no findings of fact. We are satisfied that it must here be held that the assessment was limited to rights in the streets of Los Angeles derived by plaintiff from the State of California, and not covered by the federal franchise, and that the description was not so imperfect as to invalidate the assessment."

It is our conclusion that the description, in the light of the record, is not so imperfect as to invalidate the assessment.

[10-11] Is an assessment of appellant's personal property, tangible and intangible inclusive, upon a mileage basis of $300 per mile of the lines of railroad over which appellant conducts its business in this state, excessive? The burden of establishing excessive valuation was upon the defendant. (Rev. Laws, sec. 3664, *supra.*) Assuming that the net operative earnings of appellant were substantially the same in 1910 as in 1908, which appears to have been conceded, we have the sum of $3,115,026.46 as the net operative revenue derived from the tangible and intangible property combined in its business. This is a 10 per cent net earning on property of the value of over $31,000,000. Taking the entire operative mileage of the company, 65,474 miles, including nearly 15,000 miles of steamship lines, and we have a net earning of approximately $48 per mile. Even if we exclude, from a capitalization of the net earnings of the company upon a 10 per cent basis, the value of all the property of the company situated outside the State of Nevada and used in its operative business, to wit, $4,251,939.16, the figures would still show a net earning of over $40 per mile for the entire system, or a valuation of $400 per mile for the system as a whole.

In taking 10 per cent as the basis of capitalization of

the net earnings of the company, we do not wish to be understood that so high a rate would be entirely just to the state, but such rate is used for the purpose of showing that the valuation placed upon appellant's property was well within a capitalization determined from an assumed high rate of income.

[12] Whether the system of determining the valuation of appellant's property, applied by the state board of assessors, was correct or not, it does not appear that it operated to impose an excessive valuation. The fact that erroneous methods may in good faith have been used to determine valuations is immaterial, we think, if an excessive valuation did not result therefrom.

In taking the total operative mileage of the company in making the above estimate of value, we do not wish to be understood as holding that the ocean steamship mileage should be included. For the present we express no opinion as to whether that mileage should be considered. Assuming that it ought not to be included, and assuming 8 per cent to be a fair rate of interest upon which to estimate the value of appellant's property subject to assessment upon a mileage basis, we would have resulting a valuation in excess of $750 per operative mile.

Appellant contends that the net income of the company from its intrastate business in Nevada for the year 1910 was only $6,225.61, and, if any basis of capitalization is taken to determine the value of property within the state, it should be on this sum. This calculation leaves out entirely, as a means of determining the value of the tangible and intangible property of the company within the state, net receipts from interstate business, and does not take into consideration at all the net operative receipts of the entire system, and is not a fair means of determining valuation as pointed out by the Supreme Court of the United States in the 165th and 166th U. S. Reports, *supra*.

Judgment affirmed.