The motion of the State of Nevada and Huston D. Mills to dismiss the appeal as to them is granted.

THOMPSON, J., did not participate in the consideration or determination of this case.

THE STATE OF NEVADA, THE NEVADA TAX COMMISSION; THE COUNTY OF CLARK; AND THE COUNTY OF NYE, POLITICAL SUBDIVISIONS OF THE STATE OF NEVADA; W. W. GALLOWAY, TREASURER AND EX–OFFICIO TAX RECEIVER OF THE COUNTY OF CLARK AND EUDORA V. MURPHY, TREASURER AND EX–OFFICIO TAX RECEIVER OF THE COUNTY OF NYE, APPELLANTS, *v.* NEVADA POWER COMPANY, A CORPORATION, RESPONDENT.

No. 4678

March 12, 1964           390 P.2d 50

*Harvey Dickerson,* Attorney General, of Carson City, and *Eli Grubic,* Special Deputy Attorney General, of Reno, for Appellants.

*V. Gray Gubler,* of Las Vegas, and *Best, Best & Krieger,* of Riverside, California, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

The appeal requires us to decide whether the *application* of the formula used by the Nevada Tax Commission to measure the value of public utility franchises for

ad valorem tax purposes is constitutionally permissible.[1] We hold that it is not and affirm the judgment entered below.

The case was presented on an agreed statement of facts. It reads:

"IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, by and through their respective counsel, that plaintiff, NEVADA POWER COMPANY, has waived and does hereby waive its claim for tax refunds for the assessment year, 1960–1961, in all respects save and except only that said plaintiff reserves its right to tax refunds, if any are due and owing, by reason of the fact that the State Tax Commission included working capital and intangibles in arriving at the assessed valuation of plaintiff's properties.

"IT IS FURTHER STIPULATED AND AGREED (a) that plaintiff has followed all procedures required of it to entitle it to tax refunds by reason of the inclusion of working capital and intangibles in the assessed valuation of plaintiff's properties for the taxable year 1960–1961, in the event it is determined by the above-entitled court that working capital and intangibles are exempt from taxation under the Constitution and Laws of the State of Nevada, (b) that the working capital of plaintiff in the amount of $534,424.00 included in its tax base in the indicator of value, Book Cost Less Depreciation, was computed on the basis of twelve and one-half percent ($12\frac{1}{2}\%$) of the operating expenses for the previous

---

[1]Nev. Const. art. 10, § 1, in relevant part, reads: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except * * * shares of stock (except shares of stock in banking corporations), bonds, mortgages, notes, bank deposits, book accounts and credits, and securities and choses in action of like character are deemed to represent interest in property already assessed and taxed, either in Nevada or elsewhere, and shall be exempt."

year, excluding depreciation and taxes, which represents the Tax Commission's formula for computing working capital for a period of 45 days necessary for a going business for that number of days, (c) that intangibles comprised of bank deposits, temporary investments and other assets of an intangible nature, which were used as a measure of franchise value, in the sum of $334,-000.00, were not deducted from the capitalized income indicator of value and that similarly $176,430.00 was not deducted from the indicator of value of stock and debt, (d) that the portion of the assessed valuation of plaintiff's properties for the tax year in question attributable to working capital and intangibles was the total of assets in this category included in said three indicators of value, divided by three and multiplied by 35%, to-wit, the sum of $121,899.63, and (e) that the refunds due (if the court decides the matter in favor of plaintiff) are (i) from Clark County, $4,695.31 and (ii) from Nye County, $54.20."

The stipulation is clear that constitutionally exempt intangibles were included in the commission's computation of the total tax due for the taxable year in question. Notwithstanding this fact, it is the commission's position that such items may properly be included for the purpose of *measuring* the value of the taxpayer's franchises; that their inclusion for that purpose does not result in taxing exempt intangibles in violation of the state constitution. On the other hand, the utility contends that any formula which utilizes in any degree constitutionally exempt items is not permissible.

All agree that public utility franchises may have value and that such value, if any, is subject to assessment and tax. The franchises are intangible in nature, and their value is difficult to ascertain. The legislature, in providing that the full cash value of all franchises and property be assessed and taxed [NRS 361.320(2); NRS 361.225; NRS 361.025] did not itself prescribe the method to be used to determine full cash value. Rather, it delegated that authority to the tax commission. NRS 361.320(2); cf. State v. Wells, Fargo & Co., 38 Nev.

505, 150 P. 836. However, the legislature did require that the commission value the franchises and the physical property as a "collective unit," and that the formula utilized show all elements of value in arriving at, and fixing the value for, any class of property assessed. NRS 361.320(2). We deem this to mean that the assessed valuation of the utility's physical property and franchises is to be reflected in one figure; the physical property and franchises are not to be separately assessed and taxed. Accordingly, the method used to determine the total assessed valuation must have valid application to every class of property assessed, in this case the physical properties and franchises.

Here the formula or method used by the tax commission to determine the utility's total assessed valuation consists of three indicators of value, the "book cost less depreciation" indicator, the "capitalization of income" indicator and the "stock and debt" indicator. These three approaches to value were employed and weighted to arrive at a total assessed valuation figure for the physical properties and franchises as a collective unit. However, any attempt by us to explain the procedures utilized to arrive at the total assessed valuation, is greatly hampered by the meager record before us, and it is not appropriate that we indulge in presumptions. It seems to us that it may be possible to use each of the indicators of value, and weight them, without violating the constitutional prohibition against taxing specified intangibles. However, on the stipulated facts before us, it is plain that the constitutional prohibition has been violated.

In the "book cost less depreciation" indicator of value, 12½ percent of working capital was included as a measure of franchise value.[2] It is conceded that the working capital is mainly comprised of tax exempt items (bank deposits, easily liquidated securities, etc.). Neither this

---

[2]The term "working capital" is used to mean the liquid assets on hand to meet current obligations. Consolidated Gas Co. v. City of New York, 157 F. 849, (reversed on other grounds, 212 U.S. 19). In the present case 12½ percent represents 45 days—which, according to the tax commission, is the least amount of time that would pass between the sale of power and the receipt of revenue.

record nor reason suggests a reasonable correlation between working capital and franchise value. Hence the inclusion of tax exempt items in this manner necessarily, to some extent, subjected these exempt items to taxation.

The "capitalization of income" indicator is similarly subject to challenge. The theory of this indicator is that the net income capitalized indicates the size or value of its source. Hence if *all* net income was capitalized (viz. the net income from the sale of power *and* from nonphysical investments), the physical properties, franchises and tax exempt items would necessarily be valued; and, of course, if the tax exempt items were not withdrawn or deducted, they (as well as the physical properties and franchises) would be taxed. Similarly, if *only* the net *operating* income was capitalized (income from the sale of power) and the value of the tax exempt items was added to the capitalized net operating income as a measure of franchise value, this also was not permissible. As to the application of this indicator of value, the stipulation is not precise and clear. However, we read the stipulation to mean that tax exempt items were included and not later deducted. Thus it is evident that this indicator was improperly applied.

Nor may the third approach to value as applied here (the "stock and debt" indicator) successfully withstand constitutional attack. In brief, this method is designed to value the entire business. The company's total liabilities and the aggregate selling price of its stock are totaled (less certain deductions which are not relevant to our discussion). The figure thus reached is supposed to reflect what a purchaser would pay for the entire business. As tax exempt items (as well as franchises, physical plant, and everything else) necessarily are included in an appraisal of the entire business, they will be taxed unless deducted.

We reiterate that the three "indicators of value" utilized to measure the value of the company's franchises (as well as the value of its physical properties) are not

inherently objectionable. They may be used and weighted without violating the constitutional provision in question. However, in this case the tax commission applied its valuation formula in such a way as unconstitutionally to tax exempt items to the extent indicated by the stipulation.

Affirmed.

BADT, C. J., and McNAMEE, J., concur.