THE STATE OF NEVADA, Respondent, v. THE CENTRAL
PACIFIC RAILROAD COMPANY, Appellant.

Tax Suit—Fraud in Assessment as Matter of Defense. Where, in a suit
against the Central Pacific Railroad Company to recover taxes under an assess-
ment made in the *absence* of a legal statement, defendant set up in answer that
the assessment was made by the assessor, fraudulently and contrary to his
official judgment, at a sum nearly three times greater than the fair value of
the property : *Held*, that such answer stated good matter of defense and was
not demurrable.

Meaning of Allegation of "Fair Valuation." Where, in answer to a tax
suit, the defense was fraud in the assessment, and it was alleged that in a cer-
tain statement furnished the assessor, (but which was informal) the property
was "set down as of the value of $6,000 per mile, which was a fair valuation
thereof, and so known and believed by the assessor.": *Held*, that this amounted
to an allegation that $6,000 per mile was a just and fair value, and conse-
quently that an assessment of $15,000 per mile was excessive.

Liberal Construction of Pleadings. The old common law rule, that a plead-
ing must be construed most strongly against the pleader, is replaced by the
broader, more sensible and just rule of the code, that it shall be liberally
construed with a view to substantial justice between the parties.

Fraud in Assessments. As the law requires an honest and just estimate of
value to be placed upon property for the purposes of taxation, an excessive
valuation made by an assessor contrary to his official judgment and with intent
to injure, is a fraud against which the law will afford relief.

Failure to furnish Statement—Exorbitant Valuation. The fact that a tax-
payer fails to make a statement as required by law, does not authorize the
assessor to impose a valuation which he knows to be exorbitant and unjust.

APPEAL from the District Court of the Third Judicial District,
Washoe County.

This was an action against the Central Pacific Railroad Company
and its real estate in Washoe County, to recover $16,402.50 alleged
to be due for taxes for the year 1869, and ten per cent. thereon
as damages for non-payment. The valuation of the property of
the company was the same referred to and involved in the case of
*The State* v. *Commissioners of Washoe County*, 5 Nev. 317.

*S. W. Sanderson*, for Appellant.

I. Fraud in the assessment is one of the defenses allowed by the
statutes of this state in actions of this character. Under this pro-

vision, any act on the part of the assessor, of either omission or commission, which misleads the taxpayer, or allows him to suppose, contrary to the truth, that he has secured to himself the benefit of statutory provisions intended for his security and protection against unequal and oppressive taxation, must amount to fraud. The *suppressio veri* or *suggestio falsi* of equity jurisprudence must amount to fraud under this statute. In this case, the appellant was deprived of its legal right to an equalization of the assessment in question, by the action of the assessor; and, further than this, the assessor, in willfully assessing the property, contrary to his official judgment, at a higher figure than its actual value, perpetrated a gross fraud upon the appellant.

II. The property in question is exempt from state taxation. 12 U. S. Stats. at Large, 489; *Cooley* v. *Board of Wardens*, 12 How. 299; *Gilman* v. *Philadelphia*, 3 Wallace, 713; *Crandall* v. *The State of Nevada*, 6 Wallace, 35.

III. It is not claimed that the National Government has an exclusive jurisdiction in all respects over this road. Such a claim would be untenable. Its jurisdiction is limited to such matters as affect its right of construction, maintenance, repair, and unembarrassed, unobstructed, and unburdened use for all purposes for which said road has been constructed, leaving the jurisdiction of the state untouched as to all matters which are not calculated to retard, impede, burden, or in any manner control its full operation. Nor is it claimed that the interest of private individuals in the road cannot be taxed by the state; but it is not conceded that the *stock* of the corporation can be taxed by the state.

*L. A. Buckner*, Attorney General, and *Robert M. Clarke*, for Respondent.

I. The answer is insufficient, inasmuch as it does not state the facts which constitute the alleged fraud. 1 Van Sandtford's Pleading, 355; 15 Cal. 414; 30 Cal. 572.

II. The alleged excessive valuation does not constitute fraud under the statute. 10 Wend. 186. Equalization is the remedy for excessive valuation. 4 Nev. 251. But this remedy is forfeited

by failure to make statement.    Stats. 1869, 185, Sec. 3.    5 Nev. 317.    Assessors can make valuation without statement, and with-'out demand of statement.    4 Nev. 338.    The statement is merely in aid' of the assessor.    4 Nev. 178, 251.

III.  The taxing power of the state reaches all the property and business within the state not properly denominated "means of the General Government."    Angel & Ames on Corporations, 470, note 3; *Nathan* v. *Louisiana*, 8 Howard, 83.    The Central Pacific Railroad Company of California is not a means adopted by the General Government in the execution of its constitutional powers, either within the rule of reason or decided law.    It is a private corporation.    Angel & Ames, Sec. 14; 4 Wheaton, 668.

By the Court, LEWIS, C. J.

The state filed a complaint, in the usual statutory form, against the defendant, for the recovery of a tax due and unpaid for the year 1869.    The defendant's answer was demurred to, and the demurrer sustained.  A supplemental answer was also filed, and afterwards an amended answer, which was also demurred to, and the demurrer sustained; and upon refusal to amend, judgment was rendered for the state, from which defendant appeals.

The grounds taken by the demurrer are: first, that the facts relied on in the answer are not alleged with sufficient certainty; and secondly, admitting the pleading to be sufficient in this particular, still the facts do not constitute a defense.    The defense pleaded is fraud in the assessment, and the facts constituting it are thus charged in the defendant's pleading: "That on or about the tenth day of August, A. D. 1869, John Corning, then being the acting general superintendent and managing agent of the Central Pacific Railroad Company of California, the aforesaid defendant, did furnish and deliver to said assessor a duly verified statement of the property belonging to the said railroad company, with the value thereof set down, as required by the act of said state, entitled "An act supplemental to an act, entitled an act to provide revenue for the support of the government of the state of Nevada, approved March 19th, 1865, amendatory thereof," approved March 6th, 1869.    Said statement was duly sworn to by the said John Corn-

ing, as managing agent as aforesaid, before an officer of and in the state of Nevada, duly authorized to administer oaths, of which said assessor had full knowledge; but the said John Corning had accidentally omitted to describe himself in the affidavit appended to said statement as the acting general superintendent of said defendant, and also omitted, through inadvertence, to sign the same; and the said assessor, although it was his duty so to do, and although he had ample time and opportunity so to do, failed and refused to call the attention of the said John Corning, or the said defendant, to said mistake; but craftily and fraudulently intending to disregard his duty in the premises, and to evade the laws of the said state in such case made and provided, and to impose upon said railroad company an excessive, illegal and fraudulent valuation, did conceal the said omission from said railroad company, and fraudulently determine that he would take advantage of said omission and mistake, and in disregard of his official duty and judgment, would assess said property at more than its value; that he knew and was satisfied that said statement, so sworn to by said Corning, contained a fair valuation of said property, and had it been properly signed he would have assessed the same as so stated; but in view of said omission, he assessed the said property at a much higher figure, contrary to his official judgment, and with intent to impose an excessive valuation and tax upon said defendant. That in said statement, so verified by said John Corning, the said railroad and telegraph line of the said railroad company were set down as of the value of six thousand dollars per mile, which was a fair valuation thereof, and was so known to and believed by the said assessor; yet the said assessor, without notice to the said defendant or the said John Corning, or other officer of said company, and without availing himself of other evidence under oath, and contrary to his official judgment, did fraudulently and craftily set down and assess the said railroad of defendant at the sum and value of fifteen thousand dollars per mile."

The first question necessary to be determined here is, whether there is a direct allegation that the property was assessed beyond its real and just value—whether fifteen thousand dollars per mile was an excessive valuation; for if there be no such allegation, it must be

admitted at once there is no showing of injury resulting from the fraud charged, and consequently it constitutes no defense to the recovery of the tax.   It will be seen the answer alleges that Corning set down the value of the road, in the statement made by him, at six thousand dollars per mile, and then it is directly averred that the value so set upon it was a fair valuation thereof.   This is not an allegation that Corning deemed that sum a fair valuation, but the defendant itself makes the direct and positive averment that the value so fixed by him, that is, six thousand dollars per mile, was the fair value of the road.   This is substantially and virtually an allegation direct and unequivocal that six thousand dollars per mile was its just and fair value.   If the allegation referred to does not amount to this, we are at a loss to determine what is meant by it.   If the mind be not influenced by the remembrance of the old rule, that a pleading must be construed most strongly against the pleader, but seek to solve the question in hand solely by the broader, more sensible and just rule of the code, namely, that "in the construction of a pleading for the purposes of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties," (Practice Act, Section 70) there can certainly be no question but the defendant has, in that portion of the answer referred to, directly alleged that six thousand dollars was a fair valuation of the property assessed.

It is equally clear that the law only requires property to be assessed at its fair value—by which it is to be understood, its just, honest, equitable or reasonable worth or price.   Does the law require more ?   Certainly not.   It only demands that an honest and just estimate of value shall be placed upon property for the purpose of taxation.   Nor does it always require its exact value ; for in a majority of cases there is something which cannot be ascertained by fixed and unalterable rules ; where it has no fixed market value, it can only be arrived at approximately, by calculation or estimation, by comparing it with other property of similar character, by the extent of its productiveness, or the revenue which may be derived from it, taking also into consideration its durability, the probable length of time that it will yield a profit, with numerous other matters which often necessarily enter into or affect its value.   In

such case, oppression upon the citizen by an excessive valuation is to be avoided on the one hand, and wrong to the state on the other, by an insufficient estimate ; but its fair' or just value (all the influencing circumstances considered) should be ascertained for the purpose of taxation. When this is done, the law is undoubtedly satisfied and justice accomplished. Property may—nay, often does —have a temporary and fictitious value, which, however, can seldom be realized. Can it be claimed that in such case it should be assessed at such value, which would often be far beyond what it is probable can ever be realized from it, and which is only transitory in its character? No assessor who is actuated by the honest purpose and just motives which should always control public officers in the discharge of their duties, would consider it his duty to place such fictitious and uncertain value upon it, but would rather ascertain its true, real or just value by the best means within his power, and assess it accordingly ; for every man is satisfied, by intuition even, that the law requires only the real and fair value of the property for the purpose of taxation. If it is estimated beyond that, an injustice is done the citizen; if less, a wrong is perpetrated on the commonwealth.'

But is the allegation equivalent to an allegation that six thousand dollars was the fair value of the road ; that is, would there have been any substantial difference in the allegation had the word " value " been used instead of " valuation " ?' Evidently not. The word valuation as here employed signifies value. Valuation is defined as the price set upon anything — the estimated or rated worth of anything ; value. The words, as defined, seem to be synonymous. Value is generally but an estimate of the worth of a thing — there is not an exact standard whereby it can always be determined ; and valuation, when used in its passive signification, as in this allegation, means the estimated value or worth placed on the thing.

Here then, is an allegation that the fair or just value of the road (and consequently the value which the law made it the assessor's duty to place upon it) was six thousand dollars per mile. But it is charged that, although he knew this to be its fair value, yet contrary to his official judgment, and with intent to defraud the defendant, he fraudulently and craftily set down and assessed the

same at fifteen thousand dollars a mile.   Can it be said that such
facts do not constitute a fraud against which the law will afford
relief ?   Can it be maintained that if the taxpayer has inadvert-
ently neglected to make a statement as required by the assessor,
the latter may disregard every known rule for estimating the value
of property for taxation, and impose a valuation upon it which he
knows to be exorbitant and unjust ?   In other words, is the tax-
payer under such circumstances completely at the mercy of the
assessor ?  Clearly not.  Every man's sense of justice revolts at such
a doctrine ; nor does the law leave the citizen so utterly without
protection.   The statute imposes a penalty for a failure or neglect
to make out a statement, which is the deprivation of the right to
have the assessment made by the assessor equalized by the board
constituted for that purpose.   Yet, he has still the right to insist
that the officer, who in such case makes the assessment, shall dis-
charge his duty honestly, and that he shall not knowingly and
fraudulently place an excessive valuation on his property.   Not-
withstanding the failure on the part of the taxpayer to return a list
when demanded, it is no less the duty of the assessor to be gov-
erned by just rules and the fairest motives in making the assess-
ment of his property.   Such failure to comply with the demand of
the officer does not place the citizen in the condition of an outlaw,
beyond the reach of law or the protecting arm of a court of justice.
To a certain extent it is true the statute expressly deprives him of
a right—that of obtaining relief before the board of equalization.
This, however, is the extent of the penalty for the neglect.   This
takes from him the right to claim any reduction in the valuation of
his property, if the assessment has been honestly made ; although
it may be exorbitantly overestimated ; but does not deprive him of
the right to claim relief in a court of justice against an overesti-
mate, fraudulently and purposely placed on the property — he is
deprived of all remedy for the errors of the assessor, but not for
his fraudulent misconduct.   The statute designates a fraud in the
assessment as one of the defenses which may be made to an action·
for taxes.   The facts here alleged certainly constitute fraud in the
assessment, and consequently the case is brought directly within
the statute.

8

It must be borne in mind that we are simply discussing the sufficiency of a pleading and not the real facts in this case, and therefore do not wish to be understood as intimating that fraud was really practiced. That is a matter which must be established by the defendant, if it exists at all, at the trial on its merits.

The demurrer was improperly sustained. The order and judgment below must, therefore, be reversed.

By GARBER, J.: I dissent.