NELLIS HOUSING CORPORATION AND NELLIS
GARDENS COMPANY, APPELLANTS, *v.* STATE
OF NEVADA, COUNTY OF CLARK, AND
NEVADA TAX COMMISSION, RESPONDENTS.

No. 4120

May 22, 1959                               339 P.2d 758

(Petition for rehearing denied June 22, 1959.)

*Toy R. Gregory*, of Las Vegas, for Appellants.

*George M. Dickerson*, District Attorney, Clark County,
for Respondents.

# OPINION

By the Court, MERRILL, C. J.:

This appeal concerns actions brought by these appellants to recover taxes paid under protest. The taxes were levied for the year 1955–1956 upon possessory interests

in land located in Clark County. The land itself is owned by the United States and appellants contend that they are improperly being taxed upon the tax-exempt interest of the United States.

This contention was made by appellants before the board of equalization of Clark County, Nevada. The action of the Clark County assessor was sustained by that board. An appeal was then taken to the state board of equalization and the assessment was sustained by the state board. This action was then brought. The court below upheld the taxes as proper and the present appeal was taken.

Nellis Housing is lessee from the United States of a housing project consisting of 401 units constructed in 1952. Nellis Gardens is lessee of a project consisting of 400 units constructed in 1954. The lands, owned by the United States, constitute a part of the Nellis Air Force Base in Clark County.

Both leases were executed under the provisions of Title 8 of the National Housing Act, (12 U.S.C.A., sec. 1748), known as the Wherry Act. Their purpose is to furnish inexpensive housing for personnel stationed at the air base. The term of each lease is 75 years. The ground rental payable to the United States under each lease is $100 a year.

Under the terms of the leases and collateral agreements relating thereto, the housing units were constructed by lessees in accordance with plans and specifications furnished by the United States. Replacement reserves are maintained by lessees out of rentals received, into which specified sums are regularly deposited to assure that all furnishings, fixtures and appliances are replaced when outworn. Maintenance of the housing units themselves is assured by an annual inspection and report by the Federal Housing Administration. Maintenance crews employed by lessees carry out all maintenance operations directed by the reports.

It further appears that in connection with the housing projects a school was built and is maintained without expense to the Clark County school district, although

it is operated by the district. All streets were constructed and are maintained by lessees. Fire and police protection is furnished by the air base.

The rentals charged by lessees are fixed by agreement with federal agencies. To the base rental thus fixed is added a proration of all taxes assessed against the lessees.

The housing units are constructed of cinder block. Upon the trial below undisputed expert testimony was introduced to the effect that this material is more durable and lasting than brick; that the maintenance required of lessees is of a higher standard than that ordinarily practiced; that under the agreed maintenance practices the units would be tenantable and have useful value at the expiration of the lease term.

The leases provide, pursuant to the National Housing Act, that all buildings and improvements erected by lessees shall become real estate and part of the leased lands and public buildings of the United States.

The taxes in question were levied as ad valorem property taxes. The notice to Nellis Housing shows the following assessment: "real estate or possessory claims" $94,235; "improvements" $1,169,840; "personal property" $28,000; a total of $1,292,075. For Nellis Gardens the respective figures were $91,650; $1,185,380; and $28,000; for a total of $1,305,030. In both notices the property assessed was described as "Imps. on leased land."

It is conceded that the interests of the lessees are subject to taxation. Upon this appeal we are concerned with the propriety of the valuation of these taxable interests as made by the Clark County assessor. His methods are not described in any detail.

From the testimony given by him in the trial below it appears that he proceeded to ascertain the total value of the land, improvements and personalty and appraised the lessees' interests at those figures. He stated, "I treated it  *  *  *  just the same as if you owned it. Whenever you have that long a lease I consider you own it  *  *  *."

This statement was later elaborated as follows, "This

method of valuation was employed because for all practical purposes under a lease of 75 years with buildings and improvements thereon having a useful estimated life of not more than 35 years the entire worth of said buildings and improvements is attributable to the lessee's interest and the possibility of a reverter to the United States of the fee does not affect valuation of the lessee's interest." It does not appear from the record how the life expectancy of 35 years was estimated. There is no evidence that such was the expectancy.

It would appear from the testimony of the assessor that he did give consideration to the fact that the streets in connection with the housing projects were constructed and maintained by the lessees. He testified that because of this fact the valuation which otherwise would have been placed upon the land (without improvements) was cut in half by him.

However, it is clear, notwithstanding such concessions, that the interest which was appraised was the ownership interest. Our question is whether, under the circumstances of this case, this was proper or whether, on the contrary, it constituted an arbitrary method of arriving at the value of the taxable interest.

Respondents rely on certain decisions of the United States Supreme Court. In 1957, speaking through Mr. Justice Black, that court in three cases handed down a series of opinions dealing with the question whether an interest of the United States had indirectly and improperly been taxed. United States and Borg-Warner Corporation v. Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424; United States and Continental Motors Corporation v. Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436; Detroit v. Murray Corporation of America, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441.

In each case the tax in question had been assessed upon property admittedly owned by the United States. In each case the court upheld the tax as a use tax under a Michigan statute providing that when tax-exempt property is used by a private party in a business conducted for profit, the private party is subject to taxation to the same extent as though he owned the property.

The cases are distinguishable upon this ground. In the case at bar we are concerned with an ad valorem tax and not with a use tax under such a statute. This distinction is emphasized by Mr. Justice Black in the Borg-Warner case, 355 U.S. 471, 78 S.Ct. 477, 2 L.Ed.2d 428, "In urging that the tax assessed here be struck down the appellants rely primarily on United States v. Allegheny County, 322 U.S. 174, [64 S.Ct. 908, 88 L.Ed. 1209], but we do not think that case is at all controlling. In Allegheny the Court ruled invalid a tax which the State did not contend was 'anything other than the old and widely used ad valorem general property tax' to the extent it was laid on government property in the hands of a private bailee."

Offutt Housing Company v. County of Sarpy, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151, involved the taxation of property leased for a term of 75 years under the Wherry Act. In this respect it is similar to the case at bar. Also, there as here, the tax in question was an ad valorem property tax. There as here the interest of the lessee was equated with the ownership interest. The court upheld the tax.

This case illustrates the necessity for differentiating between those instances in which the taxable interest is the ownership interest and those in which it is a possessory interest.

In the Offutt case it does not appear that the tax was levied upon a possessory interest in land. It was not a leasehold which was being taxed. It would appear that the subject of taxation was the physical plant itself: the buildings and improvements, but without reference to the land upon which they stood. Those buildings and improvements were shown to have an estimated useful life of but 35 years: less than half the leasehold period.

Under these circumstances the court concluded, [351 U.S. 262, 76 S.Ct. 819, 820, 100 L.Ed. 1160], "In the circumstances of this case, then, the full value of the buildings and improvements is attributable to the lessee's interest." Further it was stated, [351 U.S. 261, 76

S.Ct. 819, 100 L.Ed. 1160], "The government may have 'title' but only a paper title * * *."

The court thus in effect held that the circumstances were such that, as to the buildings and improvements, all values of ownership were enjoyed by the lessee; that the lessee for purposes of ad valorem taxation might be regarded as possessing title to the buildings and improvements. The ownership interest, then, was taxable to the lessee and it was that interest and not a possessory interest which was taxed.

Such is not the case before us. Here the land itself must be considered. It cannot here be said that ownership of, or title to, the land, has vested in these lessees by virtue of their lease. Their interests remain possessory interests only. Ill. Central R.R. Co. v. City of Louisville, 249 Ky. 219, 60 S.W.2d 603; see Anno. 55 A.L.R. 154. As to the land it is conceded that the reversionary interest has value.

Even as to the buildings and improvements, if they could properly be considered separately, the record indicates their useful life to be such that it cannot be said that their full value is attributable to the interest of the lessees.

The court below, it is clear from the record, discounted the testimony relative to the useful life of the buildings and improvements. It considered the situation as too speculative to be susceptible of being satisfactorily established.

This may well be true. However, it serves to defeat rather than to establish the right to treat the interests of these lessees as ownership rather than as possessory interests. If title, for purposes of taxation, is to be divorced from legal ownership the justification should appear clearly and not through resort to speculation.

In the case at bar, then, we are faced with a case in which the taxable interest is a possessory and not an ownership interest. Such an interest is taxable in this state and under our constitution, Art. 10, sec. 1, must be taxed.

With reference to the basis for valuation NRS 361.-225 provides, "All property subject to taxation shall be assessed at its full cash value." NRS 361.025 provides, " 'Full cash value' means the amount at which the property would be appraised if taken in payment of a just debt due from a solvent debtor."

Under these statutory provisions the proper basis for valuation of a possessory interest in tax-exempt land is the full cash value of the leasehold and not the full cash value of the land and buildings leased. This is pointed out in De Luz Homes v. County of San Diego, 45 Cal.2d 546, 290 P.2d 544, 555, where it is stated, "In practice, assessors usually enter the entire value of land and improvements on the tax roll without distinction between possessory and reversionary interests, and since this practice results in a single amount reflecting both interests on the roll, the constitutional mandate that all property be taxed is obeyed. * * * As between reversioners and possessors payment of the tax is a private arrangement. * * * When, however, the possessory interest is taxable and the reversion is exempt, only the possessory interest is subject to assessment and taxation. * * * 'When there is a lease of land owned by the state or a municipality, the reversion being exempt from taxation, the usufructuary interest alone is subject to tax in proportion to its value; and in the absence of agreement to the contrary, the tax necessarily falls upon the lessee.' Hammond Lumber Co. v. County of Los Angeles, 104 Cal.App. 235, 240, 285 P. 896, 898."

In the De Luz case the California Supreme Court was dealing with the problem of the proper basis for valuation of a possessory interest in tax-exempt land under the Wherry Act and was faced with statutory provisions identical to those of Nevada which have been quoted. The court stated, "The standard of valuation prescribed by the Legislature is that, '[A]ll taxable property shall be assessed at its full cash value.' Rev. & Tax. Code, § 401. 'Full cash value,' as defined in section 110 of the Revenue and Taxation Code, 'means

the amount at which property would be taken in payment of a just debt from a solvent debtor.' It provides, in other words, for an assessment at the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. It is a measure of desirability translated into money amounts, * * *, and might be called the market value of property for use in its present condition. * * *"

And later, "Since nonexempt possessory interests in land and improvements, such as the leasehold estates involved in the present actions, are taxable property, * * *, they too must be assessed at 'full cash value.' "

The property subject to taxation with which we are concerned, then, is the leasehold. It is the leasehold which must be assessed at its full cash value. The full cash value of the leasehold is that price which the leasehold would bring to its owner, the lessee, if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other.

The assessor has not proceeded to ascertain the price which the leasehold would bring. He has proceeded instead to ascertain the price which the lands, buildings and improvements themselves would bring. He has justified his method, not by proof of identity in values, but by expressing his opinion that the property interests were identical. They are not identical, as we have discussed. He has in effect, then, appraised Property A and arbitrarily assigned that valuation to Property B.

We conclude that the taxable property here involved has not been properly assessed.

Under these circumstances appellants contend that the entire tax is void and that they are entitled to recover the whole amount paid by them, relying upon Wright v. Cradlebaugh, 3 Nev. 341. While we feel that

case to be distinguishable upon the facts, it is also distinguishable upon the ground that subsequent statute law has removed its applicability to the case at bar.

NRS 361.420 provides for payment of taxes under protest and for the bringing of suit to recover the sums so paid. Subsection 4 specifies the grounds of protest available to the taxpayer, including, "(b) That the property is exempt from taxation * * *. * * * (g) That the assessment complained of is discriminatory in that it is not in accordance with a uniform and equal rate of assessment and taxation, but is at a higher rate of the full cash value of the property so assessed than that at which the other property in the state is assessed."

Subsection 5 provides, "In all cases mentioned in this section, where the complaint is based upon any grounds mentioned in subsection 4, the entire assessment shall not be declared void, but shall only be void as to the excess in valuation."

The legislative intent is clear that where error is committed in the assessment of taxable property, that property shall not thereby escape taxation. The proper remedy in such a case is to correct the error to the end that the property be correctly assessed.

Respondents, on the other hand, contend that this remedy is not available to appellants for it is not the remedy they have sought by this action. Respondents point out that appellants have never sought an *excess* in valuation; that they have made no proof as to the extent of any excess and that the court below could not have entered judgment for any excess.

Appellants have indeed sought a judgment greater than was their right. Rule 54(c) NRCP, however, provides, "Except as to a party against whom judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

It is true that upon the proof presented at trial, neither the trial court nor this court could determine

the excess in valuation. This is due, however, to the procedure followed by the assessor. As we have heretofore noted he has not evaluated the leaseholds. He has evaluated the ownership interest and has assigned that value to the leaseholds. By his failure to evaluate the leaseholds he has made it impossible to ascertain the extent of any excess in valuation.

In De Luz Homes v. San Diego County, supra, it is stated, "Assessors generally estimate value by analyzing market data on sales of similar property, replacement costs, and income from the property * * *, and since no one of these methods alone can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them * * *." [290 P.2d 544, 555.]

Until the assessor proceeds to exercise his administrative function in the selection of methods for the valuation of the *property subject to taxation,* the courts are powerless to determine any excess in valuation. The remedy at this point, then, is to remand the matter to the Clark County Board of Equalization for evaluation of the leaseholds here involved.

Our opinion thus far has dealt with the land and improvements. In addition, upon each lease, personal property was assessed at $28,000.

Appellants contend that since replacement of outworn property is assured by their replacement reserve, there is residual value in the personal property as well as in the improvements.

The tax, however, was upon the existing property as depreciated. It is clear that as to the items taxed (as distinguished from their ultimate replacements) no residual value is to be expected at the expiration of the lease term.

As to the personal property, then, the case of Offutt Housing Co. v. County of Sarpy, supra, may be said to apply. As to all items taxed it may be said that their full value is attributable to the lessees' interests.

Whether this property should be separately taxed or

should be taken into consideration in connection with the leaseholds we do not here decide. At this stage of the proceedings this question is left to the administrative determination of the county board of equalization, subject to review as provided by law.

Judgments reversed with instructions that the trial court remand these proceedings to the Clark County Board of Equalization for evaluation of the leaseholds as the property subject to taxation.

BADT, J., and BREEN, D. J., concur.

McNAMEE, J., having disqualified himself, the Governor designated Honorable Peter Breen, Judge of the Fifth Judicial District Court, to sit in his place and stead.