188 P.3d 1092 (2008)
The STATE of Nevada ex rel. STATE BOARD OF EQUALIZATION, An Agency of the State of Nevada; Washoe County, A Subdivision of the State of Nevada; Washoe County Assessor; Nevada Tax Commission; and Nevada Department of Taxation, Appellants,
v.
Leslie P. BARTA, Respondent.
The State of Nevada ex rel. State Board of Equalization, an Agency of the State of Nevada; Washoe County, a Subdivision of the State of Nevada; Washoe County Assessor; Nevada Tax Commission; and Nevada Department of Taxation, Appellants,
v.
Todd Lowe, Respondent.
The State of Nevada ex rel. State Board of Equalization, an Agency of the State of Nevada; Washoe County, A Subdivision of the State of Nevada; Washoe County Assessor; Nevada Tax Commission; and Nevada Department of Taxation, Appellants,
v.
Barbara Frederic, Respondent.
The State of Nevada ex rel. State Board of Equalization, an Agency of the State of Nevada; Washoe County, A Subdivision of the State of Nevada; Washoe County Assessor; Nevada Tax Commission; and Nevada Department of Taxation, Appellants,
v.
Alvin A. Bakst; Carol P. Buck Trust; Calvin P. Erdman, Jr.; Alan Glen; Larry & Maryanne B. Ingemanson Trust; V Park, LLC; Jon Thomas; FFO, LLC; Lana J. Vento Trust; VIFX, LLC; Nicole Vento, LLC; and Agnieszka Winkler, Respondents.
The State of Nevada ex rel. State Board of Equalization, An Agency of the State of Nevada; Washoe County, A Subdivision *1093 of the State of Nevada; Washoe County Assessor; Nevada Tax Commission; and Nevada Department of Taxation, Appellants,
v.
J. Robert Anderson; Tom Austin; Jane Barnhart; Robert Bender; Nancy Cumming; Joseph D'Andre; Donald F. Frei Trust; Eugene T. Gastanaga Trust; Roger Leach; Carol Edwards Associates; Paul A. Levy Family Trust; James Moriarty; James Nakada; Ross Pendergraft Trust; Peno Bottom Trust; Peno Bottom Limited Partnership; Garrett Taylor; Donald Wilson; Lawrence Watkins; And Esmail Zanjani, Respondents.
Nos. 47397-47401.
Supreme Court of Nevada.
July 25, 2008.
*1094 Catherine Cortez Masto, Attorney General, Karen R. Dickerson, Senior Deputy Attorney General, and Dennis L. Belcourt, Deputy Attorney General, Carson City, for Appellants the State of Nevada ex rel. State Board of Equalization; the Nevada Tax Commission; and the Nevada Department of Taxation.
Richard A. Gammick, District Attorney, and E. Terrance Shea, Deputy District Attorney, Washoe County, for Appellants Washoe County and the Washoe County Assessor.
Leslie Barta, Incline Village, in Proper Person.
Norman J. Azevedo, Carson City, for Respondents Tom Austin; Alvin A. Bakst; Jane Barnhart; Robert Bender; Carol P. Buck Trust; Nancy Cumming; Joseph D'Andre; Carol Edwards Associates; Calvin P. Erdman, Jr.; FFO, LLC; Donald F. Frei Trust; Eugene T. Gastanaga Trust; Alan Glen; Roger Leach; James Moriarty; James Nakada; Ross Pendergraft Trust; Peno Bottom Limited Partnership; Peno Bottom Trust; Garrett Taylor; Jon Thomas; Lana J. Vento Trust; Nicole Vento, LLC; VIFX, LLC; Lawrence Watkins; Donald Wilson; Angieszka Winkler; and Esmail Zanjani.
Morris Pickering and Peterson and Suellen E. Fulstone, Reno, for Respondents J. Robert Anderson; Barbara Frederic; Larry & Maryanne B. Ingemanson Trust; Paul A. Levy Family Trust; Todd Lowe; and V Park, LLC.
*1095 BEFORE THE COURT EN BANC.[1]

OPINION
By the Court, HARDESTY, J.:
These consolidated appeals arise from the same central conflict over property tax valuation that we addressed in State, Board of Equalization v. Bakst.[2] In Bakst, several taxpayers challenged the Washoe County Assessor's use of certain appraisal methods to establish the taxable values of their properties for the 2003-2004 tax year. The district court, and later this court, determined that the Assessor's methods were unconstitutional and ordered the taxpayers' properties' taxable values rolled back to the 2002-2003 tax year levels.[3]
Meanwhile, several Incline Village and Crystal Bay area property owners in Washoe County, including many of the taxpayers involved in the Bakst litigation, administratively challenged the Washoe County Assessor's assessments for the subsequent tax year, 2004-2005. Both the Washoe County and State Boards of Equalization denied the Taxpayers relief, and the Taxpayers petitioned the district court for judicial review. The district court determined that the Taxpayers' petitions for judicial review presented issues that were factually identical to the issues in Bakst, which at that point had been decided at the district court level and was pending appellate review. As a consequence, the district court granted their petitions and rolled back their properties' 2004-2005 taxable values to the 2002-2003 rates, as was done to the prior year's values in Bakst. These consolidated appeals from the district court's orders regarding the 2004-2005 tax year followed.
In resolving these appeals we, like the district court, conclude that nothing significant distinguishes these cases, factually or legally, from Bakst. The State and County appellants nevertheless contend that, even if unconstitutional methods were used to determine the respondent Taxpayers' properties taxable values, we should reverse the district court orders granting the petitions for judicial review because the Taxpayers failed to prove that their properties' 2004-2005 taxable values exceeded their full cash values. That position, however, disregards a taxpayer's right to a uniform and equal rate of assessment and taxation, which is guaranteed by Article 10, Section 1 of the Nevada Constitution. We conclude, as we stated in Bakst, that a property value determined using unconstitutional, nonuniform methods is necessarily unjust and inequitable. Thus, because the methods used to value a taxpayer's property are a material consideration in determining whether the property was justly and equitably valued, a taxpayer may challenge an assessment based on the use of unconstitutional methods even if the assessment does not exceed full cash value. Since the Taxpayers here properly challenged their assessments and demonstrated that those assessments were based on unconstitutional methods, we affirm the district court's orders.

FACTUAL AND PROCEDURAL BACKGROUND
In assessing property for tax purposes, county assessors must determine the property's "taxable value"[4] by separately appraising the "full cash value" of improved land consistently with the use of the improvements, and the replacement cost of any improvements, less depreciation and obsolescence.[5] The taxable value must not exceed the entire property's "full cash value."[6] Then, assessors calculate 35 percent of the taxable value to establish the property's "assessed value," the amount on which property taxes are ultimately based.[7]
*1096 By statute, assessors are required to determine taxable value by physically reappraising properties at least once every five years.[8] Appellant the Washoe County Assessor last physically reappraised properties located in Incline Village and Crystal Bay in 2002, to establish their values for the 2003-2004 tax year.[9] In appraising the properties, the Assessor used a "sales comparison approach" to value the land. Thus, to arrive at the taxable value for the subject land, the Assessor relied on sales prices of properties in the surrounding area, adjusting the sales prices of those properties and the subject land's valuation based on the properties' comparable views, beachfront qualities, times of sale, and planned uses.
Pursuant to several taxpayer challenges, we reviewed the Assessor's 2003-2004 Incline Village and Crystal Bay assessments in Bakst. Our review led to the conclusion that the methods the Assessor used to adjust the comparable sales prices were unconstitutional because they had not been established or approved by the Nevada Tax Commission and varied from the methods used in other parts of Washoe County and throughout the State.[10] Accordingly, we rolled back the properties' taxable values to the 2002-2003 tax year rates.[11]
While the Bakst case was proceeding through the various stages of review, the Assessor assessed property taxes in Washoe County for the next tax year, 2004-2005, which is at issue here. The 2004-2005 tax year was a factoring year for the Incline Village and Crystal Bay area, meaning that the Assessor was not compelled to physically reappraise each property's value. If the Assessor did not reappraise a property, he was required by statute to determine the property's current assessed value by multiplying the prior year's assessed value by a factor for any improvements, developed by the Tax Commission, and a factor for land, developed by the Assessor and approved by the Tax Commission.[12]
No statute or regulation governs the factors' development, except for a statute requiring that the land factor chosen result in a median assessed-value to taxable-value ratio between 30 and 35 percent.[13] Apparently, the land factor for the Incline Village and Crystal Bay area for the 2004-2005 tax year was 1.0, and the improvements factor was 1.00962. According to the Assessor, to establish the assessed values for 2004-2005, he multiplied the 2003-2004 assessed values by the above factors, resulting in a slight increase in total assessed value for each property in 2004-2005. In certain instances, however, the record demonstrates that the Assessor visited the properties and established valuations for 2004-2005 by altering his previous classification of the property's view or beach quality.
Arguing that the Assessor used unconstitutional and unauthorized methodologies in determining the 2004-2005 values of their properties, respondents, who comprise 35 Incline Village and Crystal Bay area taxpayers, administratively challenged their 2004-2005 property taxes. In responding to the Taxpayers' challenges, the Assessor did not rely on any explanation of factoring to justify his 2004-2005 assessments, but instead presented an analysis of comparable sales establishing that the properties' taxable values for 2004-2005 did not exceed their full cash values. The analysis of comparable sales in each case used at least one of the methods that this court declared unconstitutional in Bakst.
Although the Washoe County Board of Equalization and appellant the State Board of Equalization granted reductions to some of the Taxpayers based on the physical characteristics of their properties, the Boards summarily rejected the Taxpayers' argument that the Assessor's methodologies were unconstitutional *1097 and did not reduce property values on that ground. The State Board rejected the Taxpayers' argument that the Assessor's methods were unconstitutional because those methods had been challenged during the previous year's administrative appeals, and therein, it had determined that the methods were constitutional. The State Board also rejected the Taxpayers' argument that the Assessor's methods were prohibited by regulations adopted by the Nevada Tax Commission in August 2004, agreeing with the Assessor that the 2004 permanent regulations were irrelevant in these cases because they did not apply retroactively. Then, determining that the properties' 2004-2005 taxable values did not exceed their full cash values, the Boards each concluded that the properties' valuations were just and affirmed the Assessor's values.
After the State Board denied the Taxpayers relief, they filed petitions for judicial review in the district court. Before the district court, in addition to asserting that the 2004-2005 assessments were based on invalid valuation methods, the Taxpayers argued that the State Board failed in its duty to equalize taxable values statewide. Although the State Board disagreed with the Taxpayers' request for equalization in the context of their petitions for judicial review, it and the Assessor ultimately agreed that the court should remand the matter to the State Board so that it could create a record regarding its equalization process.
The State Board considered the remanded issue at its next scheduled hearing in March 2006. The transcript of the State Board hearing reflects, however, that the State Board appeared uncertain about how to equalize property values, the scope of its duty to equalize, or how to resolve potential conflicts between its and the Tax Commission's property value determinations. The Department of Taxation contended that the duty to equalize statewide was accomplished through the Department's ratio studies and review of county assessors' methodologies and work product and, thus, the State Board had no independent duty or power to engage in equalization. The Taxpayers, however, argued that the State Board had both a statutory duty and the authority to equalize property values statewide. After also hearing from the public, the Assessor, and a Deputy Attorney General, the State Board concluded that it needed more time to consider the remanded issue and continued the matter, without responding to the district court's remand order.
Frustrated by the delay, the Taxpayers requested that the district court rescind the remand. The district court then entered its final judgment in these cases. The district court found that the taxes assessed in the Incline Village and Crystal Bay area for the 2004-2005 tax year were not just or equitable because they were based on methods declared unconstitutional in the district court's Bakst decision. The court ordered the assessment and levy of taxes for 2004-2005 voided and directed that the Taxpayers receive a refund of taxes paid in excess of those that would have been due if the 2002-2003 assessed values had been used for the 2004-2005 tax year, plus six percent annual interest. The State Board, the Tax Commission, the Nevada Department of Taxation, Washoe County, and the Assessor now appeal.

DISCUSSION
When considering an appeal from a district court order granting judicial review of a State Board decision, we stand in the same position as the district court.[14] Our review is limited to the record before the State Board,[15] and we presume that the State Board's decision is valid.[16] We will overturn the State Board's decision, however, if the Taxpayers "`show by clear and convincing evidence that the valuation established by the State Board is unjust and inequitable.'"[17] The Taxpayers can satisfy this burden *1098 by showing that the State Board "`"applied a fundamentally wrong principle"'"[18] in determining the validity of the Taxpayers' properties' assessments. We also review the State Board's statutory construction de novo and will void government actions that violate the Constitution.[19]

Bakst controls the outcome of these cases
The Taxpayers argue that to develop their properties' values for 2004-2005, the Assessor used the same methods that we declared unconstitutional in Bakst. The State and County appellants assert, however, that the Taxpayers' properties' 2004-2005 valuations were developed by factoringa purportedly distinct and statutorily approved method for assessing property. Despite the Taxpayers' challenges to the methods used to value their properties, the State Board failed to make findings or otherwise develop a record that clearly set forth the valuation methodologies used by the Assessor. In these cases, the record arguably reflects either the use of the unconstitutional methods or factoring. Regardless, we conclude that neither approach supports the State Board's conclusion that the Taxpayers' properties' valuations were just and equitable.
To the extent that the Assessor developed the Taxpayers' properties' 2004-2005 values by using the same methods that we declared unconstitutional in Bakst,[20] clearly, the Bakst analysis controls the outcome of these cases. Nonetheless, the State and County appellants attempt to distinguish these cases from Bakst, arguing that two distinctions exist: (1) the Tax Commission's temporary regulations, filed in December 2002, justified the Assessor's reappraisal methodologies; and (2) the permanent regulations adopted by the Tax Commission in August 2004 validated those methodologies.
With respect to the State and County appellants' first argument, this court generally will not consider arguments that a party raises for the first time on appeal.[21] We have not previously determined, however, whether this rule applies to issues raised for the first time in the district court in a petition for judicial review of an administrative decision.[22] Because judicial review of administrative decisions is limited to the record before the administrative body,[23] we conclude that a party waives an argument made for the first time to the district court on judicial review. Since the record here is devoid of evidence that the temporary regulations were addressed or considered in the State Board proceedings, that argument was waived.[24]
Regarding the State and County appellants' second argument, that the 2004 regulations validated the methods used to develop the 2004-2005 values, we note that the State Board found below, based on arguments from the Assessor and the Department, that the permanent regulations were *1099 irrelevant to these cases because they were not retroactive. While we may judicially estop a party from asserting two conflicting positions to attain an unfair result in abuse of the legal system, given the widespread importance of this case, we decline to do so here.[25] Nonetheless, we agree with the State Board's determination that the regulations were not retroactive.
Under NRS 361.300(6), the Assessor was required to notify taxpayers of their assessments for 2004-2005 by December 18, 2003. The 2004 permanent regulations did not become effective, however, until almost eight months later.[26] Regulations, like statutes, operate prospectively, unless an intent to apply them retroactively is clearly manifested.[27] The 2004 permanent regulations do not provide for retroactive application.[28] Because the regulations became effective after the Assessor determined the Taxpayers' properties' 2004-2005 values and did not apply retroactively, they do not provide a basis for distinguishing the case from Bakst.[29]
Because the State and County appellants have failed to distinguish this case from Bakst, insofar as the Assessor used the same, unconstitutional methods to develop the Taxpayers' properties' 2004-2005 taxable values, these cases are controlled by the analysis in Bakst. The State and County appellants argue, however, that the Assessor did not use the same methods in 2004-2005 as he used in 2003-2004. Instead, they assert that by using the factoring method to develop the Taxpayers' properties' 2004-2005 values, any constitutional defect from 2003-2004 was cured.[30] We reject this argument on two grounds. First, the record does not explain the use of the factoring method, and second, the factoring method itself, as described by the Assessor, merely extends the application of the prior year's assessed value as part of the calculus to determine the current year's assessed value.
The record contains no explanation of the factoring method, how the 2004-2005 factors were developed, or how those factors were applied, as purported, to remedy the prior valuations' infirmities. Presumably, the Assessor presented no argument or evidence regarding factoring below because the Taxpayers' arguments were identical to those made in Bakst and had been previously rejected by both the County and State Boards. But this court's review is generally confined to the record before the State Board,[31] rendering full consideration of this issue unavailable.
Even so, on appeal, the Assessor has represented that the factors were used to adjust the previous year's assessed values based upon any changes in the housing market. *1100 The Assessor argues that, because factoring is a statutorily approved method of determining a property's assessed value in a year in which the property is not reappraised, the 2004-2005 assessments are valid. By the Assessor's own description, however, factoring does not independently assess any particular property's taxable value, but rather merely adjusts the prior year's assessed values en mass by a certain percentage, purportedly reflecting current market conditions.[32] According to the Assessor, he develops the land factor by looking at all land sales in the area since the last physical reappraisal and comparing the sales prices to the prior assessments. Then, based on the median ratio of those properties' assessed values to sales prices, the Assessor develops the factor and multiplies the prior year's assessed values for all properties in the area by it. Thus, based on this description, it appears that the factoring method does not independently address an individual property's taxable value; rather, it simply adjusts the previous year's assessed value based on a mathematical analysis of the general market trend.
We determined in Bakst that the methods used by the Assessor to determine the 2003-2004 property valuations were unconstitutional, and therefore, the assessments based on those valuations were null and void.[33] In each of these cases, the Taxpayers' properties' 2003-2004 assessed values were developed using methods that we declared unconstitutional in Bakst; therefore, each of the Taxpayers' 2003-2004 values were null and void. Because null and void values could not be validly adjusted, and because the adjustment of those unconstitutional values by applying the same factors to each property in 2004-2005 did not address or remedy the 2003-2004 values' unjustness and inequity, the use of factoring does not materially distinguish this case from Bakst. Thus, even if we were able to review the Assessor's use of factoring, it appears that the resulting 2004-2005 values were affected by the same unconstitutional infirmities as the 2003-2004 values and, like those values, are unjust and inequitable.

The State Board applied a fundamentally wrong principle, resulting in unjust and inequitable valuations of the Taxpayers' real property
The State and County appellants also argue that the Taxpayers did not meet their burden of proving that the valuations established at the State Board were unjust or inequitable. They contend that, under early Nevada decisional law, an assessment should not be voided as unjust unless it exceeds full cash value, even if the valuation on which the assessment was based was developed using unconstitutional procedures. The Taxpayers concede that their properties' 2004-2005 taxable values did not exceed their full cash values. Nevertheless, they assert that merely because their properties' full cash values were not exceeded does not establish that the valuations were just and equitable. We agree with the Taxpayers' argument.
In Bakst, we recognized that the methods used to value taxpayers' properties play a material role in ensuring that the constitutional guarantee of a uniform and equal rate of assessment and taxation are preserved.[34] That guarantee is set forth in Article 10, Section 1 of the Nevada Constitution, which instructs, "The Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory." This court addressed Article 10, Section 1 early in this state's history, in the seminal case State of Nevada v. Eastabrook. In Eastabrook, this court recognized that the first clause of Article 10, Section 1 of the Nevada Constitution was intended, at the very least, to ensure that all types of property were taxed at an equal rate:
[T]he constitutional convention . . . meant to provide for at least one thing in regard to taxation: that is, that all ad valorem taxes should be of a uniform rate or percentage. That one species of taxable property *1101 should not pay a higher rate of taxes than other kinds of property. . . . The language used may mean much more than this, but it cannot mean less.[35]
To satisfy this constitutional guarantee, the court held, in Eastabrook, that all property must be taxed at the same rate. Later, in Bakst, noting that the Legislature had directed the Tax Commission to establish regulations uniformly governing property taxation throughout the state, we recognized that Article 10, Section 1 meant something more: to secure a uniform and equal rate of assessment and taxation, like properties' taxable values must be obtained using uniform assessment methods.[36]
As the Legislature apparently appreciated, uniform assessment methods, properly applied, will necessarily produce the same measure of taxable value for like properties. Those evenly measured taxable values will be assessed at a uniform rate35 percentresulting in an equally proportioned tax among like properties and allowing the County and State Boards to the thoroughly carry out their duties to equalize any assessor- or property-typebased assessment differences. However, if varying methods are used to determine the taxable values of like properties (take, for instance, two nearly identical, neighboring properties), then equalization becomes difficult and there can be no guarantee that the same measure of taxable value will be assigned to the properties. Clearly, this would violate the constitutional promise of "a uniform and equal rate of assessment and taxation."[37] Consequently, in Bakst, we stated that "the Constitution clearly and unambiguously requires that the methods used for assessing taxes throughout the state must be `uniform.'"[38] The rule thus enunciated requires county assessors to apply only those valuation methodologies set forth in regulations adopted by the Tax Commission for use throughout the state, ensuring that taxpayers' properties are uniformly assessed and taxed.
The State and County appellants do not specifically request that we reconsider Bakst. Rather, they argue that, under State v. Wells, Fargo & Co.[39] and two cases entitled State of Nevada v. Central Pacific Railroad Co., one from 1871[40] and one from 1875,[41] an assessment based on erroneous methods should not be voided unless it is also excessive, the theory being that no injury results to a taxpayer unless by excessive assessment.[42] But clearly, when the owner of one of two nearly identical neighboring properties pays more in taxes than her neighbor because nonuniform methods have been used to assign differing taxable values to the two properties, the owner with the greater tax burden has suffered an injury, regardless of whether her property's taxable value exceeded its full cash value. The owner with the lesser tax burden has likewise suffered an injury, in that his property was not valued uniformly with his neighbor's; however, that injurious assessment is less likely to be challenged. Even more salient is the injury when nonuniform methods cause the unequal taxation of an entire assessment group.[43] Suffice it to say, neither Wells, Fargo nor either of the Central Pacific cases addressed the constitutional issues surrounding the nonuniformity of methodologies used to value property for taxation like the issues that we considered in Bakst.[44] Insofar as Wells, Fargo, *1102 Central Pacific (1875), and Central Pacific (1871) suggest that a taxpayer suffers no injury by, and thus cannot contest, taxable valuation inequities arising from the use of nonuniform assessment methods, we now expressly overrule them.
Nevada's Constitution guarantees "a uniform and equal rate of assessment and taxation."[45] That guarantee of equality should be the boards of equalization's predominant concern, and that concern is not satisfied by merely ensuring that a property's taxable value does not exceed its full cash value. Under Bakst, a valuation developed in violation of taxpayers' constitutional right to a uniform and equal rate of assessment and taxation is an unjust valuation, and in upholding an assessor's unconstitutional methodologies, the State Board applies a fundamentally wrong principle.[46]
In making its determinations in these cases, the State Board focused on only one consideration in determining whether the Taxpayers' property values were unjust and inequitable: whether taxable value exceeded full cash value. The State Board thus failed to consider the Assessor's valuation methods for 2004-2005 and upheld the assessments, which were ultimately based on the methodologies held unconstitutional in Bakst. Accordingly, we conclude that the Taxpayers met their burden of proving, by clear and convincing evidence, that the State Board applied a fundamentally wrong principle because they showed that the Assessor used unconstitutional methodologies in each of these cases and that the State Board nonetheless upheld his assessments.

Refunds are the appropriate remedy in these cases
The State and County appellants further argue that if this court determines that the Taxpayers met their burden, we should not roll back the Taxpayers' properties' taxable values to the 2002-2003 values. They ask that instead, we remand these cases to the State Board for it to assign the properties new, constitutional taxable values for the 2004-2005 tax year. In so arguing, the State appellants point to Nellis Housing v. State of Nevada, in which we held that remand was required because we could not determine the amount of excess taxation without a new appraisal by the assessor to determine the appropriate value of the property.[47] That case, however, is distinguishable from the instant appeals because here we have a concededly appropriate valuation, as discussed in Bakst.
In Bakst, after determining that the 2003-2004 tax year values based on the Assessor's unconstitutional methodologies were void,[48] we decided that the appropriate valuations for 2003-2004 should be based on the valuations for the previous year, for which the taxpayers had conceded validity.[49] Here, for the same reasons, we conclude that refunds are the proper remedy.

Statewide equalization
Finally, the Taxpayers request that we address the State Board's duty to equalize taxes statewide. Under NRS 361.395(1), the State Board clearly has a duty to equalize property valuations throughout the state: "the [State Board] shall . . . [e]qualize property valuations in the State."[50] Furthermore, NRS 361.400 establishes a requirement, separate from the equalization duty, that the State Board hear appeals from decisions made by the county boards of equalization. The two statutes create separate functions: equalizing property valuations throughout the state and hearing appeals from the county boards.
The Taxpayers argue that if the State Board had performed its duty to equalize *1103 property values statewide, then it would have recognized the unequal property taxation between them and taxpayers in the rest of the state. The record reflects that the State Board failed to explain how it equalized property values for the 2004-2005 tax year, if indeed it did so; however, we interpret the Taxpayers' argument on this point as a request for alternative relief. In light of our conclusion that the Taxpayers are entitled to refunds because of the Assessor's use of unconstitutional methodologies, we decline to further address this argument.

CONCLUSION
In these cases, the State Board erred by disregarding the Taxpayers' arguments that the Assessor used unconstitutional methods to determine the taxable values of their properties and by failing to recognize that a taxable value may be unjust and inequitable despite being less than the full cash value of the property. Thus, the Taxpayers met their burden of proving that the taxable values of their properties were unjust and inequitable by showing that, in assessing their properties, either by reappraising or factoring, the Assessor used methods or adjusted values that we declared unconstitutional in Bakst. We conclude that nothing significant distinguishes these cases, factually or legally, from Bakst, and we therefore affirm the district court's orders granting judicial review, declaring the Taxpayers' 2004-2005 assessments void, and setting their assessed values for 2004-2005 to the 2002-2003 levels. The Taxpayers are entitled to refunds of all excess taxes paid and six percent annual interest.[51]
We concur: GIBBONS, C.J., and MAUPIN, PARRAGUIRRE, DOUGLAS, and CHERRY, JJ.
NOTES
[1] The Honorable Nancy M. Saitta, Justice, did not participate in the decision of this matter.
[2] 122 Nev. 1403, 148 P.3d 717 (2006).
[3] Id. at 1416-17, 148 P.3d at 726.
[4] NRS 361.260(1).
[5] NRS 361.227(1).
[6] NRS 361.227(5).
[7] NRS 361.225 ("All property subject to taxation must be assessed at 35 percent of its taxable value.").
[8] NRS 361.260(6).
[9] State, Bd. of Equalization v. Bakst, 122 Nev. 1403, 1405, 148 P.3d 717, 719 (2006).
[10] Id. at 1416, 148 P.3d at 726.
[11] Id.
[12] NRS 361.260(5)(b). NRS 361.260(5)(a) sets forth a different method for determining assessed value in a nonreappraisal year, but that method also requires the Assessor to apply a factor.
[13] NRS 361.260(5)(b).
[14] Riverboat Hotel Casino v. Harold's Club, 113 Nev. 1025, 1029, 944 P.2d 819, 822 (1997).
[15] NRS 361.420(5); NRS 233B.135(1).
[16] Imperial Palace v. State, Dep't Taxation, 108 Nev. 1060, 1066, 843 P.2d 813, 817(1992).
[17] Id. (quoting Weiss v. State of Nevada, 96 Nev. 465, 467, 611 P.2d 212, 214 (1980)). See also NRS 361.430 ("In every action brought under the provisions of NRS 361.420, the burden of proof shall be upon the plaintiff to show by clear and satisfactory evidence that any valuation established by . . . the county assessor . . . is unjust and inequitable.").
[18] State, Bd. of Equalization v. Bakst, 122 Nev. 1403, 1409, 148 P.3d 717, 721 (2006) (quoting Imperial Palace, 108 Nev. at 1066, 843 P.2d at 817 (quoting Weiss, 96 Nev. at 467, 611 P.2d at 214)).
[19] Id.
[20] In some of these cases, the Assessor unquestionably altered the Taxpayers' properties' 2004-2005 values based on the properties' view classifications or beachfront classifications.
[21] Nevada Power Co. v. Haggerty, 115 Nev. 353, 365 n. 9, 989 P.2d 870, 877 n. 9 (1999).
[22] In Dubray v. Coeur Rochester Inc., 112 Nev. 332, 337 n. 2, 913 P.2d 1289, 1292 n. 2 (1996), an appeal from an order denying a petition for judicial review of a workers' compensation decision, this court refused to consider arguments that the appellant did not raise before either the hearing officer, the appeals officer, or the district court.
[23] NRS 361.420(5); NRS 233B.135(1).
[24] Although exceptions to the rule of waiver exist for purely legal or constitutional issues, we determine that these exceptions are inapplicable in this case. See Nevada Power, 115 Nev. at 365 n. 9, 989 P.2d at 877 n. 9 (addressing a purely legal issue raised for the first time in an amicus brief); Desert Chrysler-Plymouth v. Chrysler Corp., 95 Nev. 640, 643-44, 600 P.2d 1189, 1190-91 (1979) (addressing a constitutional issue raised for the first time on appeal).
[25] Mainor v. Nault, 120 Nev. 750, 765, 101 P.3d 308, 318 (2004).
[26] See 84 NRAR R031-03A (stating an effective date of August 4, 2004).
[27] See Public Employees' Benefits Prog. v. LVMPD, 124 Nev. ___, ___, 179 P.3d 542, 553 (2008).
[28] 84 NRAR R031-03A.
[29] The State urges this court to offer guidance as to the constitutionality of the permanent regulations. In State, Board of Equalization v. Bakst, this court made clear that assessors must use methodologies that are consistent within each county and within the state. 122 Nev. 1403, 1417, 148 P.3d 717, 726 (2006). We conclude that consideration of the permanent regulations is inappropriate in this case, where the factual record does not demonstrate their application.
[30] In responding to the State and County appellants' factoring argument, the Taxpayers assert that factoring itself is unconstitutional because no statute or regulation governs the process for developing the factor. This argument apparently was not raised below because the Assessor failed to raise the factoring argument below. Nevertheless, we note that no statute or regulation governs the factors' development, except for a statute requiring that the land factor chosen result in a median assessed-value to taxable-value ratio between 30 and 35 percent. See NRS 361.260(5)(b). While the absence of statutory or regulatory guidance for developing factors is very troubling, determining whether or not factoring is constitutional is not necessary for our resolution of these appeals; therefore, we do not further address the Taxpayers' argument. See Nev. Const. art. 10, § 1; Bakst, 122 Nev. at 1415-16, 148 P.3d at 725-26; Spears v. Spears, 95 Nev. 416, 418, 596 P.2d 210, 212 (1979) ("This court will not consider constitutional issues which are not necessary to the determination of an appeal.").
[31] NRS 361.420(5); NRS 233B.135(1).
[32] See Bakst, 122 Nev. at 1405, 148 P.3d at 719.
[33] Id. at 1416, 148 P.3d at 726.
[34] Id. at 1413, 148 P.3d at 724.
[35] 3 Nev. 173, 177 (1867).
[36] Bakst, 122 Nev. at 1413, 148 P.3d at 724.
[37] Nev. Const. art. 10, § 1(1).
[38] Bakst, 122 Nev. at 1413, 148 P.3d at 724.
[39] 38 Nev. 505, 150 P. 836 (1915).
[40] 7 Nev. 99 (1871).
[41] 10 Nev. 47 (1875).
[42] Central Pacific (1871), 7 Nev. at 102-03.
[43] As the district court noted in Bakst, when methodologies are applied inconsistently throughout a county, there exists a "high probability" that the resulting assessments did not comply with the constitutional requirement of uniformity and equality. 122 Nev. at 1408, 148 P.3d at 720-21.
[44] Wells, Fargo, 38 Nev. at 507-508, 150 P. at 837 (addressing Wells Fargo's challenges to the Humboldt County Assessor's assessment to Wells Fargo of $300 for each mile of railroad within Humboldt County over which Wells Fargo had the right to do business); Central Pacific (1875), 10 Nev. at 63-69 (addressing the validity of an assessment not based on an annunciated law or regulation); Central Pacific (1871), 7 Nev. at 101-02 (addressing an allegation that the assessor fraudulently assessed the railroad's property).
[45] Nev. Const. art. 10, § 1(1).
[46] See 122 Nev. 1403, 1416, 148 P.3d 717, 726 (2006).
[47] 75 Nev. 267, 277, 339 P.2d 758, 763 (1959).
[48] 122 Nev. at 1416, 148 P.3d at 726.
[49] Id. at 1416-17, 148 P.3d at 726.
[50] NRS 361.395(1)(a). See also id. at 1412, 148 P.3d at 723.
[51] See NRS 360.2935; Bakst, 122 Nev. at 1417, 148 P.3d at 726.